GEORGE P. SANFORD v. LOUIS E. ROWLEY.

93 119
93 509

*Libel and slander—Pleading— Innuendo— Evidence—Justification.*

1. An article charging that the plaintiff in a libel suit would, as the defendant well knew, not hesitate to lie in court, or anywhere else, to defend himself against the charges made in the alleged libelous article, charges, in effect, that the plaintiff is of such a character that he would commit the crime of perjury in order to make such defense, and the language is libelous *per se.*

2. Where pending a suit to recover damages for the publication of an alleged libelous article charging the plaintiff with various acts of political treachery, and in general arraigning him as a political traitor, the defendant publishes an article charging that the plaintiff would commit the crime of perjury in order to defend himself against the charges first made, the article first published may be introduced in evidence by the defendant on the trial of a suit brought for the publication of the second, in which the defendant attempts to justify by proving the truth of the charge last made.

3. A petition for the appointment to office of the plaintiff in a libel suit is not competent evidence to show his good character, and that his reputation for truth and veracity is good.

4. It is error to permit the counsel for the defendant in a libel suit to read from the affidavit of the plaintiff, upon which a change of venue has been granted, a statement that the plaintiff believed that a fair and impartial trial of the cause could not be had in the county where the suit was commenced, and. in which the parties resided.

5. Where there is no doubt about the meaning of the language used in the alleged libelous article, it is immaterial whether the innuendo used in counting upon it correctly states its meaning, as it will be treated as surplusage.

6. Where a defendant seeks to justify the publication of an article charging that the plaintiff would commit the crime of perjury to defend himself against charges of political treachery made by the defendant in a former article, and for the publication of which a libel suit had been commenced, the defendant may show not only the general character of the plaintiff for truth and veracity, but also that he was generally regarded in the

community where he lived as a person who, in political matters, was unworthy of belief.

Error to Eaton. (Hooker, J.) Argued April 14, 1892. Decided October 4, 1892.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

Q. A. Smith (Edwin F. Conely and Cahill & Ostrander, of counsel), for appellant.

Montgomery & Lee (Van Zile & Robson, of counsel), for defendant.

GRANT, J. This is an action of libel. The libelous language complained of was as follows:

"We know, of course, that Sanford himself would not hesitate to lie in court, or anywhere else, in order to defend himself against the truthful charges of treachery which the Journal has preferred against him. In bold, willful, skillful, and systematic prevarication he has probably never had an equal in the State of Michigan."

The innuendoes stated that by this language it was meant "that the defendant had positive knowledge that the plaintiff was a reckless and confirmed criminal at heart, who would not only falsify, but would unhesitatingly commit the crime of perjury whenever it would subserve his interest to do so," and "that the plaintiff was habitually and persistently untruthful, deceptive, and treacherous, and that his reputation for so being was fixed and general among all his neighbors and acquaintances in the community where he resided." The defendant pleaded the truth of the charges, admitted the publication, but denied that the interpretation thereof given in the innuendoes was the true and correct interpretation, and alleged that the language was susceptible of a true and correct interpretation, and that such correct interpretation was true. The

plea does not state what the defendant considered the true interpretation to be.

No innuendoes were necessary. The language is susceptible of but one interpretation. It charged that the plaintiff was of such a character that he would commit the crime of perjury in order to defend himself against the charges made. The language was libelous *per se*. The only defense available, therefore, was proof of the truth of the charge made, and, failing in this, facts in mitigation of damages.

The assignments of error, 48 in number, refer to the admission and rejection of testimony and the charge of the court. The record contains 700 pages, whereas 100 would have been amply sufficient to cover all the questions raised. So far as we consider the assignments of error of importance, they will be mentioned.

1. The defendant was permitted to introduce in evidence other articles in his newspaper published prior to the one upon which this suit is founded, charging plaintiff with various acts of political treachery, and in general arraigning him as a political traitor. Upon those articles plaintiff had brought suit for libel, and the publication now complained of followed the bringing of that suit. While there is much force in the claim of plaintiff's counsel that those articles contain independent charges, differing from the charge in the present case, still the fact remains that those articles, and the one now declared on, refer to the same transaction in which plaintiff is charged with political treachery, and in regard to which defendant charged that he would commit perjury in order to defend himself. Under the circumstances, we think no error was committed in admitting those articles.

2. The defendant had testified to the plaintiff's general reputation. On cross-examination, he was shown a petition, signed by himself and others, recommending the appoint-

ment of the plaintiff as postmaster at Lansing. This appears to have been read in evidence. The defendant then identified other signatures to the petition, and testified that, at the time, he knew that they signed it. On redirect examination he was permitted to testify what certain of these signers had said to him at various times about the character and reputation of plaintiff. These statements were hearsay, and incompetent. Had the inquiry been limited to statements made in regard to the signing of the petition, a different question would be presented. In view of a second trial, we deem it proper to say that the signatures to this petition, aside from the defendant's, should not have been admitted. The petition itself was only admissible as bearing upon the testimony of the defendant. Petitions for appointments to office are not competent evidence in a libel suit to show the plaintiff's good character and reputation for truth and veracity. This ruling covers other testimony of a similar character, which it is unnecessary to state.

3. The testimony given by the defendant to the effect that it had been generally understood that plaintiff was a professional lobbyist was incompetent. No such issue was made by the pleadings.

4. It was error to permit evidence that in 1870 plaintiff was nominated for member of the Legislature; that a certain number of his party then bolted his nomination, and published a letter giving their reasons for it. This happened 19 years before the publication of the libel in this case. Defendant was also permitted to testify to the contents of such publication, and to give the names of those who signed it. It cannot be seriously contended that these charges, made so long ago, in the heat of a political campaign, are competent evidence of the truth of the charges now made by the defendant against the plaintiff.

5. Plaintiff had obtained a change of venue from Ingham

county, where the suit was brought and where he resided, to the county of Eaton. Defendant's counsel were permitted to read from plaintiff's affidavit for this change of venue the statement that he believed that a fair and impartial trial of the cause could not be had in the county of Ingham. This was incompetent, and could not be otherwise than extremely prejudicial to the plaintiff's case.

6. The court instructed the jury as follows:

"If you find as matter of fact that the plaintiff, by innuendo in the declaration, has enlarged the language and charge made in the article, and that the charge by way of innuendo is not supported by the language of the article, then, in that case, I instruct you that the plaintiff, by the introduction of the article, must be said to have failed to prove the charge alleged in the declaration, and your verdict will be for the defendant."

This was error. There is no doubt about the meaning of the language, and in such case it is immaterial whether the innuendo correctly states the meaning. The innuendo will be treated in that case as surplusage, and the issue confined to the plain meaning of the language used. The province of the innuendo is to explain language of doubtful meaning. *Bourreseau v. Journal Co.,* 63 Mich. 430; *Randall v. Evening News Association,* 79 Id. 278; *Bathrick v. Post & Tribune Co.,* 50 Id. 629.

The charge of the court was in other respects fair, and covered the law of the case.

7. Defendant was asked in his direct examination by his counsel to state what the plaintiff's reputation for political integrity was at the time of the publication of the article. This was objected to, and not answered, but, following this, the defendant was asked to state what the plaintiff's general reputation for integrity was throughout the State and in the community where he lived. This question was not objected to, and the defendant answered that it was bad. Plaintiff's counsel in their brief claim that the ques-

tion had in view the political reputation of the plaintiff. The record does not show that fact, but the question asked and answered was one bearing upon the plaintiff's general reputation. But even if the question first put to him had been answered, in view of the article published and counted upon, it would not have been error. The general rule is that impeaching questions should be directed to the general reputation of the witness for truth and veracity; but, in the present case, the defendant had pleaded the truth of the publication, and he had a right to show what the political reputation of the plaintiff was, in order to justify a publication. The article charged the plaintiff with being a political traitor, a traitor to his party, and with having entered into a conspiracy to defeat the election of a party candidate whose nomination he had acquiesced in; and the words counted upon as libelous had reference to that fact, as they charged that the plaintiff would "lie in court, or anywhere else," to defend himself against those charges of treachery set forth in the articles. The defendant had a right to show the articles in full, and to have the language counted upon interpreted in accordance with the meaning of the articles as a whole. He had pleaded the truth as justification, and, as he had charged in the articles that he knew the plaintiff would lie to defend himself against these charges, his only justification was the truth; and he could only show the truth of the charges by proving the general reputation of the plaintiff for political treachery. The general rule is that the plea of justification must be as broad as the charge, and, in point of law, must be identical with it. But here the words import only political treachery, and lying, "even in court," to defend himself against the charge. The defendant had the right, under the circumstances, to show, not only what the general reputation of the plaintiff was for truth and veracity, but also in justification to

show by proper proofs that the plaintiff was generally regarded in that community as a person who, in political matters, was unworthy of belief. This defense was open to proof, and the defendant would have cast upon him the burden of showing it. This would be making a justification as broad as the charge, and, in point of law, identical with it. It would necessarily follow, if this were shown, that the plaintiff's general reputation for truth was bad; for it can hardly be conceived that a person whose general reputation for truth is bad, in a political sense, has a good reputation for truth and veracity in other matters.

Judgment reversed, and a new trial ordered.

The other Justices concurred.