Mollie O'Toole *v.* The Post Printing and Publishing Company, Appellant.

179      271
36 SC  424

179      271
41SC 339

*Practice, C. P.—Trial—Objection to testimony—Waiver.*

Where an objection to the admission of testimony is based upon specific grounds, all other grounds of objection may be considered as waived.

*Libel—Evidence—Newspaper—Corporation—Agent.*

In an action for libel against a corporation publishing a newspaper, plaintiff testified that she went to the office of the paper and demanded a retraction of the libelous publication.   *Held,* that what was then said by anyone connected with the newspaper could not be shown as an incident of the litigated act of publication, but it was admissible on other grounds, if the party as editor or manager of the paper, or an officer of the company had authority to speak for it.

*Libel—Evidence—Damages.*

In an action for libel, it is proper in support of the averment of special damage to admit evidence to show the injurious effect of the publication upon the reputation of the plaintiff among her friends and acquaintances, and that it prevented her from obtaining employment.

*Practice, C. P.—Charge of court—Review.*

Where a fact in dispute has not been established in favor of either party, and the trial judge has not been asked by an appropriate request for instructions to say anything in relation to it, a party cannot be heard in the Supreme Court to complain that the trial judge did not comment upon the conflicting testimony relating to the disputed fact.

Argued Oct. 26, 1896. Appeal, No. 6, Oct. Term, 1896, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. Term, 1894, on verdict for plaintiff. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for libel. Before KENNEDY, J.

At the trial it appeared that the libelous publications complained of appeared in the Pittsburg Post on October 10 and 11, 1893.

The first article, which was published, Oct. 10, 1893, has these headlines in large letters : " Gone to her drummer. A missing hotel maid being pursued by an irate parent." And the article reads thus : " About three months ago Miss Mollie O'Toole, a pretty young woman about twenty years of age, applied for work in a prominent hotel of this city. She was from McKeesport. Being of good appearance and having good manners, she was made parlor maid, which is a very desirable place for women in hotel work, but two days ago she disappeared, and is said to have gone to Philadelphia to meet a chewing gum agent whom she met at the hotel. The chewing gum gentleman made his appearance at the house about a month ago, and he and the girl got noticeably thick. He staid about one and a-half weeks, after which Miss O'Toole, a girl friend noticed, got despondent. Her sudden leave to join her drummer friend explains this, but their life will not be one of a rosy path, if her father, who is said to have gone to Philadelphia with a gun to hunt for them, finds them. Miss O'Toole is said to have been engaged to a young man in McKeesport when she left there."

This was followed the next day, October 11, with another article, which reads thus, without any head lines : " The advantage which the chewing gum agent has over other traveling men in gaining the good will of the dear girls has again been demonstrated in this city. A chewing gum man from Phila-

delphia put up at one of our hotels and Mollie O'Toole at once lost her heart. He wooed her with gum of the most succulent sort, and every time Mollie worked her jaws, she felt her love for the sweet man growing. When he voluntarily presented her with a whole box of gum, it was too much, and she hesitated no longer. Her father is now following her and her gum man into the wild, wicked east."

The plaintiff having testified that after her return from her trip East, some three weeks after the publication, she went to the office of the Post Printing & Publishing Company and there saw a Mr. Barr, she then continued as follows:

" Q. What did you say to him? A. Well, I asked him what authority had he to publish that lie in the paper."

To which defendant objected as follows:

We object to this. This is a suit against a corporation, and declarations after the fact are hardly competent. We object to any statements of agents or employees of the corporation sued, some weeks after the fact, and not as part of the res gestæ.

Objection overruled. Exception and bill sealed.

Thereupon the witness testified as follows:

" Q. What did Mr. Barr say to you, and what was done at that interview? A. Well, he said he supposed they just did it for a mere joke, and I asked him if he would contradict it in the paper, and he said, no he wouldn't do that if I intended to bring suit against him. I told him I was not guilty of that, and he would have to account for it. I says, 'I'll show that it is not so.' He said, 'We won't retract if you intend to bring suit against us.' [1]

" Q. Did the publications which have been read to the jury in your hearing have any effect upon your reputation in Mc-Keesport or in other places where you have lived, and if so, what are they?"

Objected to. That is a question for the jury and not for the witness.

By the Court: " Q. Did it have any effect at all? A. Yes, sir. Q. Then what was the effect? A. People had a bad opinion of me that read it in the papers. [2] Q. Did you have conversation with any of your friends in relation to these articles? A. Yes, sir. Q. Did you talk to any people in McKeesport or Pittsburg, or did any person talk to you about it?"

Objected to as irrelevant and immaterial. If important the persons themselves are the best witnesses.

Objection overruled. Exception and bill sealed.

" A. Do you mean the articles in the papers ? Q. Yes, the articles in the papers. A. Yes, sir. Q. Who? A. I talked to May McDermott, Mrs. McGinley and my sister, Annie O'Toole and Mrs. Corsey. [3] Q. State in what way this article had a bad effect upon you ? "

To which defendant objected as incompetent.

Objection overruled. Exception and bill sealed.

" A. In several ways, not one alone. Q. State in what way? A. It injured my character and prevented me from getting employment from people that would have employed me if that hadn't been in the paper, and it injured me in the society I associate with, and school companions didn't think as much of me afterwards." [4]

Eliza Mulligan, a witness called on behalf of the plaintiff, being upon the stand testified as follows :

". Q. Did you see these articles regarding Miss O'Toole in the Post? A. Yes, sir. Q. When ? A. Well, I couldn't tell exactly. Q. About the time of their publication? A. Yes, sir. Q. State if you read them. A. Yes, sir. Q. Do you know of others reading them? A. Yes, sir. Q. And commenting upon them? A. Yes, sir. Q. Favorably or unfavorably to Miss O'Toole ? "

To which defendant objected as incompetent.

Objection overruled. Exception and bill sealed.

" A. Unfavorably. Q. Did persons talk to you in relation to it? A. Yes, sir. Q. Do you know the fact that persons declined to speak to Miss O'Toole because of the publication of these articles ? A. Yes, sir." [5]

A. J. Barr and F. X. Barr who were connected with the newspaper testified that they had offered to publish a retraction which plaintiff declined to accept. This was denied by the plaintiff. No request was made by the defendant to the court for instruction as to this disputed fact.

Verdict and judgment for plaintiff for $1,600. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the

bill of exceptions; (6) in not charging the jury as to the effect of the offers of retraction tendered to plaintiff before suit brought, and by her declined, as testified to by defendant's witnesses, A. J. Barr and F. X. Barr.

*Willis F. McCook*, with him *John Marron*, for appellant.—The declarations of an agent made at the time of the particular transaction which is the subject of inquiry, and while acting within the scope of his authority, may be given in evidence against his principal, as a part of the res gestæ; but the declarations of an agent made after the transaction is fully completed and ended, are not admissible: Huntingdon R. R. v. Decker, 82 Pa. 119; Giberson v. Patterson Mills Co., 174 Pa. 369.

The effect of the publication is for the jury: P., A. & M. Pass. Ry. v. McCurdy, 114 Pa. 554; Rangler v. Hummel, 37 Pa. 130.

*A. B. Reid*, with him *A. V. D. Watterson*, for appellee.— The evidence of a refusal to retract was properly offered and its weight and effect was for the jury: 1 Whart. Ev., sec. 261.

Hearsay evidence upon the subject of reputation is always admissible: 1 Whart. Ev., sec. 253.

It is competent to prove by bystanders, neighbors, acquaintances or any person hearing slanderous reports or reading a libelous article, the effect of such reports upon their minds, not for the purpose of proving the meaning of the words used in the innuendo charged, but to substantiate proof of damages sustained: Warner v. Clark, 21 L. R. A. 502; Newell on Libel & Slander, sec. 311; Nelson v. Borchenius, 52 Ill. 236; Smawley v. Stark, 9 Ind. 386; 2 Greenleaf on Ev., secs. 407, 417; Miller v. Butler, 6 Cush. (Mass.) 71; Smart v. Blanchard, 42 N. H. 146; Rice v. Cottrell, 5 R. I. 340; Moore v. Stevenson, 27 Conn. 14; Park v. Free Press Co., 72 Mich. 560; Cook v. Ward, 4 M. & P. (Eng.) 99; Mills v. Winter, 94 Ind. 329; Aurora v. Hillman, 90 Ill. 66; 1 Greenleaf Ev., sec. 440; Du Bost v. Beresford, 2 Camp. 511.

The lower court will not be reversed for failure to charge the jury upon matters which were not called to its attention by a point: Connor v. Traction Co., 173 Pa. 610; Humes v. Gephart, 175 Pa. 417; Raush v. Miller, 24 Pa. 277; Reeves v. R. R., 30 Pa. 454; Newman v. Edwards, 34 Pa. 32; Bain v. Doran, 54 Pa. 124; Fox v. Fox, 96 Pa. 60.

OPINION BY MR. JUSTICE FELL, January 4, 1897:

The objection to the testimony covered by the first assignment of error was upon the ground that the attempt was to prove the declarations of an agent of the company made after the occurrence, and so remote from it as not to be a part of the res gestæ. The fact of the agency and the right of the agent to speak for the company were not at the time questioned, and it afterward appeared from the testimony that he was acting within the scope of his authority. The plaintiff had gone to the office of the company to demand a retraction of the libelous publication. What was then said by any one connected with the newspaper could not be shown as an incident of the litigated act of publication, but it was admissible on other grounds, if the party as editor or manager of the paper or an officer of the company had authority to speak for it. If the answer contained anything as to the motive of publication which was thought to be objectionable, the court should have been asked at the time to strike it out. The objection being based upon specific grounds, all other grounds of objection might be considered as waived.

The second assignment is not supported by an exception to the ruling of the court. The third, fourth and fifth assignments relate to the admission of testimony to show the injurious effect of the publication upon the reputation of the plaintiff among her friends and acquaintances, and that it prevented her from obtaining employment. Testimony as to the effect upon her feelings was properly excluded. There was no attempt to prove the meaning of the words used, or to explain the publication. The purpose was to show in what manner the publication had affected the plaintiff where she was known, and how it had prevented her from earning a living. This was in support of her averment of special damage.

We see no merit in the sixth assignment. The plaintiff had testified that her request for a retraction was refused except on terms that she would not bring suit. On the part of the defendant it was denied that any terms were insisted upon. The fact was not established in favor of either party, and the learned judge might well pass it without comment. He was not asked to say anything in relation to it, and the defendant cannot now be heard to complain that he did not: Humes v. Gephart, 175 Pa. 417.

The judgment is affirmed.