the parties. Assuming, however, that it is such a transaction, it is a separate and distinct transaction from that of demanding payment of the amount so charged. The entry of an alleged indebtedness upon one's books and the demand from the person so charged of its payment are separate and distinct transactions, and the question asked of the defendant, and which he was permitted to answer, was as to a separate transaction from that testified to by the plaintiff, and should not have been admitted. The error was material, and for that the judgment should be reversed.

Judgment reversed, and a new trial granted; costs to abide the event. All concur.

(46 App. Div. 600.)

PUTNAM v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

1. LIBEL—QUALIFICATION—EVIDENCE.
    The complaint for libel alleging that defendant charged plaintiff with making false charges against P., knowing them to be false, and the defense being justification, and one of the charges purporting to be based on plaintiff's own observations, defendant may prove that such charge was false.

2. HEARSAY—RESOLUTIONS.
    Resolutions passed by a church, after publication of an alleged libel, that plaintiff's conduct had been such as to prevent his getting a church in a certain city, are not competent to meet testimony justifying the article, being hearsay.

Appeal from trial term, New York county.

Action by James W. Putnam against the Press Publishing Company. From a judgment on a verdict for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

John M. Bowers, for appellant.
Franklin Pierce, for respondent.

INGRAHAM, J. The defendant, the publisher of a newspaper in the city of New York, published a series of articles in relation to the plaintiff's connection with a church of which he was a pastor, and this action is brought to recover the damages sustained in consequence of such publication. It is conceded that the articles were libelous per se. The substantial defense was a justification. The complaint alleges 10 separate causes of action, each consisting of a separate publication. These articles related to a controversy between the plaintiff and one Potter, who were co-pastors of a church located in this city known as the "Baptist Tabernacle." While occupying that position, the plaintiff made charges against Potter of the most serious character. The publications by the defendant related to these charges, and to the proceedings taken to investigate them. One of the publications contained a report of a committee appointed by the church to investigate these charges, in which the chairman of the committee reported to the meeting: "I do not hesitate to pro-

nounce that James W. Putnam is a deliberate, adroit, and monu-
mental liar. The circle of his actions is dotted with falsehoods from
center to circumference. I denounce him." The complaint alleges
that the defendant thereby charged, and intended to charge, that the
plaintiff, "a minister of the Christian religion, as aforesaid, and a
clergyman of the Baptist denomination, was a 'deliberate, adroit, and
monumental liar'; that he was guilty of circulating a lot of lies,—
was a dishonest man; that his conduct was unworthy of a Christian
minister, and unworthy of a Christian man; and that he was a no-
torious liar, and not entitled to credit and confidence by the mem-
bers of his church." The defendant in its answer alleged, as to each
of the causes of action, that the articles published were substantially
true; that the charges, among others, made by the plaintiff against
Potter, were that he was intemperate, and that he was guilty of
flagrant immorality, and that each of these charges was false. An-
other of the publications complained of in the complaint was the ac-
count of an ex parte council of the Baptist Church which was called
by the plaintiff, and at which the plaintiff presented a pamphlet
distinctly charging Potter with gross immorality with a woman
whose name was not given. The answer expressly alleges that these
charges by the plaintiff against Potter in this pamphlet were not
true; that the said pamphlet proceeded to give, in great detail, the
relations existing between Dr. Potter and a servant in the employ
of the Young Women's Home, and housekeeper; and that these state-
ments are false, especially a statement of what occurred on March
7, 1893; and it makes pages 27 to 33, inclusive, of this pamphlet, a
part of the answer, and alleges that the statements therein are
false. The plaintiff testified that this allegation related to a woman
named Margaret Burke, who was in the employ of Potter, or of the
church of which he was a pastor. Margaret Burke was called by the
defendant as a witness, and testified that she worked in the Young
Women's Home, or for Dr. Potter at the Church of the Tabernacle;
that she worked there about three years, and was there in the spring
of 1892 and 1893. She was asked whether she at any time was
alone with Dr. Potter. To that she answered, "No." This was ob-
jected to by counsel for the plaintiff as irregular and immaterial.
The objection was sustained, and the defendant excepted. The de-
fendant's counsel then stated that he expected to prove by this wit-
ness that all that portion of the pamphlet on which the indictment
was found, and which has been read in evidence to the jury, and
marked "Defendant's Exception No. 3," was and is absolutely false
and untrue, and by Mr. Putnam known to be false and untrue at the
time he issued it and at the time he circulated it; counsel stating:
"I propose to show by the witness that she never was alone with
Dr. Potter; that she never committed adultery with Dr. Potter;
and that she is, and was at the time charged by Mr. Putnam, and
always has been, a virtuous and good woman." To that offer the
court replied: "I regard such evidence as immaterial to the trial of
the issues in this action, and will exclude the evidence." Counsel for
the defendant then stated: "I also propose to show that the pamph-
let referred to this lady, and that she was the person described there-

in." The court replied that the evidence would be excluded, and
the defendant excepted. Further evidence was offered by the de-
fendant to show that this charge of immorality between Dr. Potter
and this woman was untrue, which, upon objection by the plaintiff,
was excluded, the defendant excepting.

We think it was error to exclude this testimony. The main ques-
tion of fact was whether these charges conceded to have been made
by the plaintiff against Potter were false, and were known by the
plaintiff to be false when he made them. It is not disputed by the
defendant but that a publication charging a clergyman with having
made false charges against a fellow clergyman, involving his moral
character, and which were known by the party making them to be
false, would be a libel per se. It certainly is a good defense to a
civil action based upon such a libel to allege that the publication
complained of was true; that the charges which were made were
false, and were known by the person making them to be false when
made. This complaint, again and again, alleges that the defend-
ant intended to and did charge this plaintiff with making false and
scandalous charges against Potter, knowing them to be false; and
the defendant, as a defense, alleges that this plaintiff did make such
charges against Potter, and that such charges were false, and were
known to the plaintiff to be false when he made them. Certainly,
to prove that defense, it was competent for the defendant to intro-
duce evidence to show that the charges made by the plaintiff against
Potter were false, and that the plaintiff knew that they were false
when made. There is no question but that one of the main charges
of the plaintiff against Potter was as to his relations with this
woman on March 7, 1893, and the answer expressly alleges that this
charge against Potter was false. It was essential for the defend-
ant, if he was to establish this defense of justification, to prove
that the charge made by Putnam was false as a fact. The defend-
ant attempted to prove that the charge was false by calling the
woman with whom the adultery was alleged to have been com-
mitted, but that testimony was objected to by the plaintiff, and ex-
cluded by the court. The libel, so far as it alleged that the plaintiff
had presented an unfounded charge against Potter, could only be
justified by proving the fact that the charge was false. The answer
alleged such justification, but the court refused to allow the de-
fendant to prove it. The serious consequences to the defendant of
this ruling appear from the charge of the court. The jury were in-
structed that the various articles constituting the libel, among other
things, charged the plaintiff with fighting for delay in the investiga-
tion of the charges made by him against Potter; that the plaintiff
was playing a game of political delay; that the object of his charges
against Potter was to smirch him, and to oust him from his church;
that the plaintiff was a liar,—a deliberate, adroit, and monumental
liar; that he was the author of scandalous charges against Potter,
and that he was unfit even to become a church member, and that he
had been indicted and kept in the prisoner's pen; that, on behalf of
the defendant, it is claimed that the articles were in substance and
in fact true, and that, therefore, it had the right to publish them;

that, where a party undertakes a justification of a libel, it is bound to prove a substantial justification,—that is, not every word, but that the substance and effect of what it has published is true; that "the charges contained in the articles in the causes of action in the complaint, to the effect that the plaintiff in this action had made these charges against Dr. Potter in bad faith, and would not follow them up by proof, and was practicing political delay, and was prosecuting Dr. Potter with improper motives, if true, was gross misconduct upon his part, and, if you should find that the statements in said publications were false, you can assess such damages as the plaintiff has suffered therefrom." The jury were also instructed that the main defense "in this action is that the various articles complained of as libelous were, in substance, true, and I charge you that, so far as you shall find the articles complained of to be true, it is your duty to find a verdict in favor of the defendant."

Thus, it appears that the complaint charges the defendant with publishing of the plaintiff that he made false and scandalous charges against his fellow clergyman; the answer admitting that allegation, but alleging that the charges made by plaintiff against his fellow clergyman were in fact false and scandalous. The defendant was prevented by the court from offering proof to establish the fact that the charges made were false, and the court charged the jury that, if the charges were false, the defendant was entitled to a verdict. The judge also charged the jury that the question as to whether Potter was guilty or not of the various charges against him was not to be tried in the action; that it was only whether the plaintiff acted in good faith in regard to these charges that this matter is brought into consideration, and it is to be considered by the jury in determining the question at issue between, not Dr. Potter and the defendant, but between Mr. Putnam and the defendant in this case. But even assuming that the only question to be determined by the jury was the good faith of this plaintiff in making the charges, when they were ostensibly based upon the plaintiff's own knowledge, to prove that they were false would certainly tend to impugn the plaintiff's good faith in making them. This charge of immoral conduct with the woman named was based upon the plaintiff's own observation, and if it was shown to be false, and that what he said as to what he heard and saw was untrue, it would certainly go a great way with the jury in their determination of the question as to the plaintiff's good faith in making the charge. But, as before stated, it would seem that, as the libel was largely made up of statements that the charges made were false and scandalous, whether or not the charges were as a fact false was a material issue involved in the action.

We also are of the opinion that the resolutions of the Temple Baptist Church of Philadelphia, which were admitted notwithstanding the objection of the defendant, were improperly admitted in evidence. The first cause of action is based upon the publication by the defendant of an interview with one Hubbard, who appears to have been connected with a church in Philadelphia with which the plaintiff had been connected. After making various statements about the

plaintiff's past life, it was stated that the plaintiff could never get another church in Philadelphia. Considerable evidence was taken upon the trial as to the circumstances under which the plaintiff left this Philadelphia church. Upon rebuttal, the plaintiff offered in evidence a copy of a resolution passed by the Philadelphia church on August 4, 1893, several months after the publication of the libel, reciting that this interview with Hubbard having been published in the newspaper, and that Hubbard, by interviews and publications, having done all that he could to injure the plaintiff's usefulness as a minister in giving these falsehoods the widest publicity, it was therefore resolved that the church esteemed it a privilege to re-express its confidence in the plaintiff, and its high regard for him as a preacher, pastor, and friend; and, second, that the church reminded Mr. Putnam, and all whom it may concern, that the only trouble this church had during his very successful pastorate of over six years was of Mr. Hubbard's own making, and that a council called for the purpose had put its seal of disapproval on the conduct and untruths to which Mr. Hubbard was then, and is now again, calling public attention. It is difficult to see upon what principle these resolutions could be evidence in any controversy between the parties to this action. It was entirely immaterial upon any issue raised by the pleadings or as to any libel described in the complaint. It is true that Hubbard and some of the plaintiff's opponents in the Philadelphia church had been examined, and had given their version of the transaction; but it certainly was not competent to answer their sworn testimony by a mere resolution passed by a religious corporation in Philadelphia, stating that their attacks upon the plaintiff were false and untrue. This was hearsay evidence of the most flagrant character, and, when admitted by the court as competent, it must have been seriously injurious to the defendant. The plaintiff attempts to sustain the admission of these resolutions in evidence upon the ground, not that they were competent as to any issue raised by the pleadings, but because the defendant, by its evidence, squarely made the issue that Mr. Putnam was so hated by the Temple Baptist Church for his sermons, in which he criticised his church members, for his arbitrary conduct, and his conduct as pastor of that church, as to hinder him from ever getting another church in that city. But assuming that the defendant had, by its evidence, raised that issue, it was to be met by the evidence of witnesses upon the stand, and not by a resolution passed long after the libel was published, and which related expressly to one of the publications complained of. It was open to the plaintiff to call witnesses to show that the testimony of the witnesses called by the defendant as to the plaintiff's conduct or relations in Philadelphia was not true, but it certainly was not competent to take the unsworn declarations of persons living in Philadelphia to dispute the testimony of the defendant's witnesses upon the stand. The plaintiff cites, as sustaining the introduction of these resolutions, the rule that, where the mental condition of an individual is at issue, declarations and statements of that individual are competent evidence to show the mental condition as original evidence, and not hearsay. But the mental condition of the members of this

Baptist Church in Philadelphia was not at issue in this case, nor was it such mental condition that was the subject of inquiry. It was whether the plaintiff's conduct had been such as to prevent him from getting a church in Philadelphia, and the facts from which the jury were asked to draw that inference were before them, and the plaintiff had the privilege of meeting those facts by competent testimony. But neither the resolution of any particular church, nor the declarations of any number of individuals, in Philadelphia, would be competent evidence upon this issue. We have thus come to the conclusion that these errors are so substantial that they require us to reverse this judgment.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.