D. RUSSELL BROWN *vs.* PROVIDENCE TELEGRAM PUBLISH-
ING CO.

PROVIDENCE—APRIL 15, 1903.

PRESENT: Stiness, C. J., Tillinghast and Dubois, JJ.

(1)  *Libel.  Publication of Court Proceedings by Newspaper.*

While the proceedings of the courts in a general way constitute legitimate items for publication in newspapers, so that litigants must submit to fair and true publication of their cases, this principle does not give a newspaper the right to prejudge a case or to misstate it, or to hold up, to scorn or ridicule, either directly or by natural implication from the language, a party who is pursuing his legal remedies in court. If one avails himself of the privilege, which is given for public reasons, to publish a report of court proceedings, he must make such report full, true, and fair, at his peril.

(2)  *Libel.  Publication of Court Proceedings by Newspaper.*

Where a newspaper stated the history of the litigation with substantial accuracy, but accompanied each statement of fact with comment and inference and insinuation directly tending to excite ridicule and depreciation of plaintiff's character, together with statements clearly imply-

ing plaintiff's inability to meet his pecuniary obligations, it is apparent that the motive was to injure plaintiff, and not to give the public a fair and truthful report of the litigation.

(3)  *Libel.  Pleading.  Surplusage.*

Where there is sufficient matter in an article that is libelous without explanation, innuendoes in the declaration not justified by the language will be treated as surplusage.

TRESPASS ON THE CASE for libel.  Heard on petition of defendant for new trial, and petition denied.

PER CURIAM.  The defendant's petition for a new trial is denied, and judgment will be rendered upon the decision of Mr. Justice Douglas, which is approved and adopted as the opinion of the court.

## DECISION.

DOUGLAS, J.  This is an action of libel, complaining of the publication of an article which appeared in the defendant's newspaper October 13, 1899, purporting, under displayed headings, to give an account of "Gov. Brown's Legal Troubles," with the sub-titles, also displayed, "Creditor in form of New England Butt Company After Him Red Hot for Settlement.  Other peculiar matters journalistic Stock Transfer to former Governor's Son to be probed in action brought."

The legal principles applicable to a case of this kind have been recently announced by this court in *Metcalf* v. *Times Publishing Co.*, 20 R. I. 674.  It may be further observed, as applicable to the present case, that if any class of people have the right to invoke the protection of the law against malicious intermeddling with their reputations, litigants in the courts should be so guarded.

(1)    The orderly system of our social life, which excludes the private redress of wrongs, provides these tribunals and compels the citizen to resort to them to enforce his rights or to defend against unjust claims.  When he is in court, therefore, as a party or as a witness, any publication unjustly commenting upon his case or his behavior calls for severe condemnation.  The conduct of the judge and jury and the de-

cisions of the court are proper subjects of fair and temperate criticism.   These are public officers performing their work in the face of public opinion, and they are responsible to the people, from whom they derive their powers, for the honest and intelligent exercise of their official functions.

A newspaper, or an individual who writes for a newspaper, may argue against the conclusions of law announced by the court, or may criticise its methods of procedure with a view to promote the correction of errors or abuses, and great latitude is allowable in such articles provided they are founded on truthful statement and proceed from good motives.

It is conceded that the proceedings of the courts in a general way constitute legitimate items for the newsgatherer to publish.

The results of a majority of cases tried, as a matter of fact, concern no one but the parties to them, but incidentally propositions of law are considered which interest the community generally; and it would be contracting the right of free speech into a narrow channel to require a selection of only those cases for report which concern public questions.   To a fair and true publication of his case a litigant must submit.   It is only an extension of the publicity of the court room itself.

But this principle gives neither to a newspaper nor to an individual the right to prejudge a case, or to misstate it, or to hold up to scorn or ridicule, either directly or by natural implication from his language, a party who is pursuing his legal remedies in court.

(2)    If one avails himself of the privilege, which is given for public reasons, to publish a report of court proceedings, he must make such report full, true, and fair, at his peril.   Tried by these principles the article complained of in this case is plainly libelous.   It relates truthfully enough certain things that took place in court.   It reproduces with substantial accuracy the tenor of the pleadings, and states the history of the litigation which terminated in the issue of an execution and the levy of it upon the plaintiff's residence.   Most of the facts, categorically stated, are substantially true; and if this were all, while the reference to cases long ago terminated might be consid-

ered a stretch of the newsgatherer's net not required by any public necessity, the article could not be seriously condemned. But every statement of fact is accompanied with comment, and inference, and insinuation directly tending to excite ridicule and depreciation of the plaintiff's character. More than this —there are direct statements which assert or clearly imply the plaintiff's inability to meet his pecuniary obligations. In one part of the article the assertion is made that "whether or not he can keep" his residence "out of the auctioneer's hands depends upon the result of a hearing which will take place to-morrow in the Appellate Division," and this statement might well happen to be read by persons who would not read the whole article and come upon the statement below, which changes the alternative prophesied by saying: "It is said that Mr. Brown now has reached the point where he will have to produce money or suffer the amputation of property possessions credited to him," which is itself an insinuation that he was carrying property in his name which did not belong to him and thus obtaining false credit. The frequent references throughout the article to the plaintiff's connection with an evening paper published in competition with the defendant's journal, as well as the whole tone of the article and its reference to the plaintiff, show that the motive of the publication was to do personal injury to the plaintiff, from dislike and ill-will, and not the giving to the public a fair and truthful report of the litigation which is made the occasion of it.

(3) Some of the innuendoes in the declaration may not be justified by the language; but these must be treated as surplusage, since there is enough in the article which is libelous without explanation. *Porter* v. *Post Publishing Co.*, 20 R. I. 88. The case in that respect is like the one considered in *Haynes* v. *Clinton Printing Co.*, 169 Mass. 512, 515, where it is said, by Holmes, J.: "It is not necessary to state these innuendoes in detail, or to consider whether they are all borne out by the words. For if they are not they may be rejected as surplusage when, as here, the words read as ordinary persons would understand them, are libelous *per se*. It is settled in England, and so far as the question has arisen in this coun-

try, in accordance with good sense, that to that extent the plaintiff was not debarred from relying on the wrong alleged and complained of merely because he interpreted it as going farther than it did in fact," citing numerous cases.

It appears in evidence that this report after being written was submitted to the scrutiny of at least two of the defendant's officials before publication; hence we must take the article to be the deliberate utterance of the defendant, and the expression of its well-considered temper and attitude towards the plaintiff.

In consequence of this publication the defendant, who had been engaged in business in this community for thirty years, was required by the bank with which he was accustomed to deal to furnish a statement of assets and liabilities, and he was compelled to submit to this humiliation as if he had been suspected of insolvency. He further testifies to a considerable loss of trade in a neighboring city where this paper was circulated.

These elements of actual damage are necessarily indefinite as data for computation in money of the injury done, but the case is one which forbids the assessment of merely nominal damages.

Taking into account the circulation of the paper, which was admitted at the trial to be 32,000 copies *per diem*, and all the other circumstances of the case, I do not consider the sum of $1,500 as an excessive remuneration to the plaintiff for what he must have suffered from this libel, and I assess the damages at that amount.

Decision for the plaintiff for $1,500 and costs.

*Edward D. Bassett and Dexter B. Potter*, for plaintiff.

*Charles A. Wilson and William J. Brown*, for defendant.