SALEM NEWS PUB. CO. v. CALIGA.

(Circuit Court of Appeals, First Circuit. March 8, 1906.)

No. 613.

1. WITNESSES—CONTRADICTION OF COLLATERAL STATEMENTS—DISCRETION OF COURT.

The admission of evidence to contradict statements made by a witness on cross-examination relating to a collateral matter is within the discretion of the trial court.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1272, 1273.]

2. EVIDENCE—HEARSAY—ACTION FOR LIBEL.

In an action for libel, the testimony of a witness to conversations with third persons, in which such persons stated that they had read the alleged libelous article, and the impressions made by it on their minds is hearsay and incompetent either upon the question of damages generally, or to show publication of the extent of circulation.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Nathaniel N. Jones (John H. Casey and Ernest Foss, on the brief), for plaintiff in error.

Alfred W. Putnam (Joseph K. Hayes, Jr., on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This is an action for alleged libel through the publication of an article concerning a picture known as "The Guardian Angel." The picture was the work of the defendant in error, a Boston artist, and had a place at the exhibition of the Society of American Artists at the Art Institute in Chicago. The alleged

libel resides in a publication which caused it to be believed that the picture was not an original work, but one copied from an earlier picture by Abbot H. Thayer.

One assignment on which the plaintiff in error relies relates to its offer to prove particulars relating to the claims and the pleadings in a pending but untried case against the Boston Journal for a publication of the same alleged libelous matter. The defendant had been permitted at the trial to cross-examine the plaintiff at length about the Boston Journal publication, as well as about a Chicago publication, with a view of showing how these matters affected his mind. The offer to show the $25,000 ad damnum in the Boston Journal suit was for purposes of contradiction; the witness having said that the Boston publication did not affect his mind as much as that of the Salem publication. It is not perceived that such proofs would have had any particular weight as contradictory matter under the circumstances. But, however that may be, the matter related to a collateral situation which was developed upon cross-examination to discredit the witness. This being so, it was within the discretion of the trial court to say how far it should go in this particular case, and, if it were a question to be reviewed here, we should say the defendant was given sufficient latitude.

The remaining assignments of error, and the ones on which principal reliance is based, relate to the testimony of the wife of the plaintiff below as to what her friends, acquaintances, the tradespeople, and the postman in Salem said about the publication and the picture. In this respect the plaintiff's wife was permitted to refer to conversations with these people in which they asked whether the publication was true, and whether the picture was like Mr. Thayer's "Guardian Angel," whether Mr. Thayer had a "Guardian Angel," and in which they said where they had seen her husband's "Guardian Angel," and the conversations covered various other statements relating to the publication in question and to her husband's picture.

Special stress is laid upon the objection which directs itself against the particulars of a conversation with one Mrs. Emerton, and of a conversation with a Mr. Coolidge in which the plaintiff's wife stated what they said about where they read the publication, and what they thought about it. The plaintiff's wife stated that her conversation with Mrs. Emerton was the summer before; that Mrs. Emerton, who was a philanthropist and one of the art patrons, told her that she was away at the time that the paper was sent to her, and that she said:

"Mrs. Caliga, how has it ever come out? I never heard the outcome of it all or any explanation of it, and only a week ago we were told about it and we wondered how it had ever been proven whether there was a similar picture of Mr. Thayer."

And when asked as to her conversation with Mr. Coolidge, she said that she remembered it:

"It was this summer, or rather in the summer, and he said that he was in Capri, Italy, spending some months there, and the paper came there, and he

said, 'Of course I read it and was very interested and I wondered if it was true, but I have never seen anything since about it. I never heard any contradiction of it, and never happened to see or hear how it was.'"

There was some question at the arguments as to the ground covered by the exceptions taken at the trial, but as we dispose of the case upon the ground that the testimony of the plaintiff's wife involved hearsay, and as the objection was distinctly noted upon that ground, we need not trouble ourselves with any questions as to the general scope of the exceptions.

If the subject-matter and the particulars of the conversations referred to were competent under the pleadings upon the question of damages, which we do not decide, or if competent for the purpose of showing publication or the extent of circulation, the statements should have come under oath from the persons named. The effect of the testimony of the plaintiff's wife was to introduce into the case unsworn, substantive evidence consisting of prejudicial declarations of third parties.

It is often said that the hearsay rule excludes evidentiary declarations of third parties not made under the sanction of an oath, and about which there is no opportunity to cross-examine to test their sincerity, accuracy, or completeness.

Without considering at all whether in some possible aspect in a trial for libel testimony tending to show the currency of the libel and the general neighborhood comment might become admissible (O'Toole v. Post Printing & Pub. Co. [Pa.] 36 Atl. 288, 289; Rice v. Cottrel, 5 R. I. 340, 342; Nott v. Stoddard, 38 Vt. 25, 30, 88 Am. Dec. 633), we think that declarations like those in question were hearsay, and, if the subject-matter and the particulars of the conversations were something the jury were entitled to consider under the circumstances of this case, that the defendant should have had the supposed benefits of cross-examination.

So far as we have seen, the authorities do not present any reasoning for or against the application of the hearsay rule in actions for libel, but apparently and without question treat declarations and the particulars of conversations like those under consideration as hearsay, and as not within any of the exceptions to the general hearsay rule. 18 Am. & Eng. Encyc. of Law, 1080; Sanford v. Rowley, 93 Mich. 119, 122, 52 N. W. 1119; McDuff v. Journal Co., 84 Mich. 1, 8, 47 N. W. 671, 22 Am. St. Rep. 673; People v. Thornton, 74 Cal. 482, 486, 16 Pac. 244; Putnam v. Press Publishing Co., 62 N. Y. Supp. 110, 46 App. Div. 600; Walker v. Meetze, 2 Rich. Law (S. C.), 570–572; Simpson v. Wiley, 4 Port. (Ala.) 215, 222.

The judgment of the Circuit Court is reversed; the verdict is set aside; the case is remanded to that court for further proceedings not inconsistent with this opinion; and the plaintiff in error recovers its costs of appeal.