Matthias, J.
 

 The appellant, who will be hereinafter referred to as the plaintiff, has assigned numerous claims of prejudicial error of the trial court, the mo.st important being the refusal to instruct the jury that the publication complained of was libelous
 
 per se.
 
 That issue was squarely presented to the court by a request of counsel for the plaintiff to give the following instruction before argument:
 

 “I charge you as a matter of law that the publication of- the editorial and pictures which is the subject matter of the plaintiff’s complaint and which is set forth in her petition, was defamatory and libelous
 
 per se
 

 It is urged by counsel for the defendants that by pleading innuendoes the plaintiff admitted the publication was not libelous
 
 per se
 
 or at least that it was ambiguous, and, therefore, a question of fact was presented which should be submitted to the jury.
 

 The rule applicable in such a situation is clearly and concisely stated in 37 Corpus Juris, 25, Section 332, as follows: ‘ ‘ The innuendo may be treated as surplusage where it is «used in connection with words which are unequivocal and actionable
 
 per
 
 se.”
 

 In 1 Cooley on Torts (4 Ed.), 511, Section 147, the rule applicable is stated thus: “When the words in themselves are actionable
 
 per se
 
 no innuendo is needed, and if the innuendo alleged is not borne out by the words, it may be treated as surplusage and a recovery had on the words themselves.” Numerous cases are cited supporting the text,”among which are
 
 Brown
 
 v.
 
 *373
 

 Providence Telegram Publishing Co.,
 
 25 R. I., 117, 54 A., 1061;
 
 Sanford
 
 v.
 
 Rowley,
 
 93 Mich., 119, 52 N. W., 1119;
 
 Morrison
 
 v.
 
 Smith,
 
 177 N. Y., 366, 69 N. E., 725; and
 
 Jones
 
 v.
 
 Roberts,
 
 73 Vt., 201, 50 A., 1071.
 

 In the case of
 
 Sanford
 
 v.
 
 Rowley, supra,
 
 it was held by the court that the province of the innuendo is to explain language of doubtful meaning, and that if the-meaning is clear the innuendo is surplusage and will be-so treated.
 

 In the case of
 
 Morrison
 
 v.
 
 Smith, supra,
 
 the contention was made that, as the purpose of an innuendo in a pleading is to show the true meaning of published words, any other meaning is to be rejected, and that however libelous the words standing alone may be, no cause of action is stated if the meaning assigned is not supported. The court rejected that contention and stated in the opinion, by Gray,
 
 3.,
 
 that “the plaintiff should be permitted to recover for a libel clearly appearing on the face of the article, for which no innuendo was necessary.”
 

 It is our conclusion, therefore, that notwithstanding the innuendoes in plaintiff’s petition, the plaintiff was not precluded from urging that the publication was libelous
 
 per se.
 

 It is well settled that in an action for libel the question whether the publication complained of is libelous
 
 per se
 
 is primarily for the court, and that it is error to submit to the jury the question whether the publication is libelous
 
 per se,
 
 unless its méaning is so uncertain and ambiguous as to require that the construction and meaning be submitted to the jury.
 
 Mauh
 
 v.
 
 Brundage,
 
 68 Ohio St., 89, 67 N. E., 152, 62 L. R. A., 477;
 
 Cleveland Leader Ptg. Co.
 
 v.
 
 Nethersole,
 
 84 Ohio St., 118, 95 N. E., 735, Ann. Cas. 1912B, 978.
 

 In the syllabus in the case last cited is a very clear and concise statement of what may constitute a publi
 
 *374
 
 cation libelous
 
 per se.
 
 It is there stated: “To constitute a publication respecting a person libelous
 
 per se,
 
 it must appear that the publication reflects upon the character of such person by bringing him into ridicule, hatred or contempt, or affects him injuriously in his trade or profession.”
 

 In the case of
 
 Culmer
 
 v.
 
 Canby,
 
 101 F., 195, it was stated by Day, J., in the opinion (after holding that “the innuendo may be treated as surplusage, and yet the publication be defamatory”), that it is a settled rule that published words “are actionable ‘when they impute to another any act, the tendency of which is to disgrace him or to deprive him of the confidence and good will of society, or lessen its esteem for him.’ ”
 

 Libel
 
 per se
 
 in a situation such as presented in this case, is generally defined as defamatory words falsely published of a person, which impute unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment.
 

 It is stated in 1 Cooley on Torts (4 Ed.), 491, Section 145, that any false and malicious writing published of another is libelous
 
 per se
 
 when its tendency is to render him contemptible or ridiculous in the public estimation, or expose him to public hatred or con tempt.
 

 It is further stated in the same volume, on page 501, that “in determining whether the words charged are libelous
 
 per se,
 
 they are to be taken in their plain and natural import according to the ideas they are calculated to convey to those to whom they are addressed, reference being had not only to the words themselves, but also to the circumstances under which they were used. ’ ’
 

 Still more pertinent to the instant case is- the rule applicable to public officers, as stated in 33 American
 
 *375
 
 Jurisprudence, 92, Section 79, as follows: “It is libelous
 
 per se
 
 to impute to a person in bis character as a public officer incapacity or any kind of fraud, dishonesty, misconduct, or a want of integrity, or to charge that he has been induced to act in his official capacity by a pecuniary or other improper consideration. ’ ’
 

 Did the trial court err in rejecting the requested charge hereinbefore quoted and thereby refusing to direct the jury that the written publication complained of was libelous
 
 per sel
 
 In the opinion of the majority of the court, the language of the publication clearly charged that the plaintiff, as judge of the Municipal Court of Cleveland, not only granted to the defendant in the criminal case a continuance of his case, upon his application, but also that in so doing the plaintiff was motivated by the intercession of such defendant’s .politically powerful friends and by lawyers-for underworld fig’ures, who had influence and knew how to manipulate matters to obtain delays, and further that by granting the continuance to such defendant, plaintiff thereby afforded him an opportunity to commit murder and by reason thereof the blood of the victim was on the plaintiff. .
 

 The action of the plaintiff thus charged by the publication was misconduct, in the performance of official duty, induced “by a pecuniary or other improper consideration” and such as to constitute misfeasance, if not malfeasance in office. It is well settled that a publication of such character is libelous
 
 per se.
 

 Our conclusion with reference to the branches of the case thus far considered makes unnecessary the discussion in detail of several of the requested instructions or of the general charge. The general effect of the principal requested instructions of the plaintiff is that if the publication was false the claim of privi
 
 *376
 
 lege would not constitute a defense.
 

 The record shows an admission that at the time of the publication complained of defendants knew that the plaintiff had not granted to the defendant in the criminal case a continuance of his case, and that the plaintiff’s only connection with the case was to grant the application of the prosecution for a continuance. The record further discloses that such application was made in open court and was granted upon the insistence of the prosecution on behalf of the state that by reason of the absence of material witnesses, the arresting officers, proof essential to support the charge was not then available. , As disclosed by the cases- annotated in 110 A. L. R., 412, the majority rule is: “In the majority of jurisdictions the rule that fair comment on' and criticism of the acts and conduct of a public officer or candidate for public office are, in the absence of- malice, privileged, does not apply, to a false statement of fact. In these jurisdictions, a defamatory statement of fact concerning one in public life, or who is a candidate for office, if false, is as actionable as would be such a statement concerning one in private life.” Cases from many jurisdictions, including Ohio, are cited in support of that rule.
 

 The minority rule as indicated is that “the privilege extends to misstatements of fact in a publication or communication relating to a public officer, or a candidate for office, if the other conditions of qualified privilege exist.” It is there disclosed, however, that even under the minority rule it must appear that the publication was made in good faith and without malice.
 

 In stating the general rule with reference to privilege it is said in 36 Corpus Juris, 1283, Section 289 :
 

 “What is privileged, if that is the proper term, is the criticism or comment, not the statement of facts on which it is based. Generally speaking, comment or
 
 *377
 
 criticism must be founded on truth. While ordinarily it does not consist of the assertion of -facts, an allegation of fact pray be justified by its being an inference from other facts truly stated. The right to comment or criticize does not éxtend to, or justify, allegations of fact of a defamatory character. If the publication is not a comment or criticism, but a statement of fact, the rules to be applied to the nature of recovery are those applicable to any other case of defamation; if defamatory and false, it is actionable, although made in good faith, without malice, and under the honest belief that it is true.”
 

 No untruth can be the basis of fair criticism, and the expression of an opinion which carries with it the imputation of wrongdoing is as much libelous as a di.rect charge of wrongdoing. The statements of fact commented on must-be true if the defense of fair comment and criticism is to 'be available. See J ones on the Law of Journalism, 99, Section 35.
 

 This rule is well stated in Prosser on Torts, 839, as follows:
 

 ‘.‘It is undisputed that there is a qualified privilege to publish matters affecting the interest of the general public, but there is some disagreement as to its extent. It is very well settled that the constitutional guaranty of freedom of speech and of the press does not confer upon a newspaper or anyone else the privilege of publishing defamation merely because it has ‘news value’ and the public would like to read it. But even as to the conduct of public affairs, which is a matter of legitimate public concern, immunity has been limited quite strictly in the case of false statements of fact, as distinguished from discussion in the form of comment or expression of opinion.”
 

 ■ The trial court committed serious affirmative error
 
 *378
 
 in the general charge such as in itself would require a reversal of the judgment. The court sought to submit to the jury the question whether the publication was libelous
 
 per se
 
 and then the court instructed the jury that “if the publication of this editorial, which publication is admitted, was false, was actuated by malice, with intent to injure this plaintiff in her profession or calling and did injure her, and if she has proven these necessary elements to you by a preponderance of the evidence, she is then entitled to a verdict at your hands.
 

 “If she has not proven to you these necessary elements, you would not- consider the case further, but would return a verdict for the defendants.”
 

 It is well settled as so concisely stated in 1 Cooley on Torts, 519, Section 150: “Where the published words are actionable
 
 per se,
 
 plaintiff, in order to make out a
 
 prima facie
 
 case, need not prove actual malice, since the law will imply malice of the character necessary to support a judgment.”
 

 A principle often announced and frequently applied is that, where a court in the course of the instructions to the jury stated a correct rule or principle of law and also a prejudicially incorrect rule or principle of law on the same subject matter, no presumption arises that the correct rule or piinciple of law was followed and applied by the jury.
 
 Bosjnak
 
 v.
 
 Superior Sheet Steel Co.,
 
 145 Ohio St., 538, 62 N. E. (2d), 305.
 

 In the instant case the broad and peremptory instruction, amounting practically to a directed verdict in favor of the defendants, if followed by the jury would necessarily result in a verdict adverse to the plaintiff. The two-issue rule can therefore have no application in this case.
 

 In accordance with the views herein expressed, the judgment of the Court of Appeals is reversed and the
 
 *379
 
 cause remanded to the Court of Common Pleas for retrial.
 

 Judgment reversed and cause remanded.
 

 Zimmerman, Sohngen and Stewart, JJ., concur.
 

 Weygandt, C. J., Turner and Hart, JJ., dissent.