By the Court.
 

 . This action in
 
 quo warranto,
 
 instituted in this court, is submitted for decision upon the' petition, answer, reply and depositions. The relator is Wilford C. Bobinson, appointed to the state Board of Barber Examiners in September, 1939, and reappointed for the term commencing September 28, 1942, and the respondent is Frank Blazina, appointed to such board on January 3,1947.
 

 The prayer of the petition reads:
 

 
 *63
 
 “Wherefore, relator prays that defendant [respondent] be required to answer by what warrant he claims to have, use, exercise and enjoy holding the office of a member of the Board of Barber Examiners; that he be adjudged not entitled thereto, and that judgment of ouster therefrom may be pronounced against him; and that relator may be adjudged entitled to said office and to all the franchises and privileges attaching to the office. ’ ’
 

 The prayer for judgment of ouster is on the ground that respondent is disqualified for membership on the board by virtue of the provisions of Section 1081-1, General Code.
 

 That section provides in part:
 

 “There is hereby created a Board of Barber Examiners consisting of three members to be appointed by the Governor. Each member of the board shall be a practical barber who has followed the occupation of barber, in this state, for at least five years immediately prior to his appointment. * * *
 

 ‘ ‘ The makeup of said board shall at all times consist of at least one journeyman barber and one master barber.”
 

 The petition recites:
 

 “Belator further says that prior to January 3,1947, the membership of the Board of Barber Examiners consisted of Fred Mourey, whose term expires September 27, 1947; Herman Morris, whose term expires September 27, 1949, and relator; that the makeup of said board consisted of two journeyman barbers and one master barber; that said Fred Mourey and Herman Morris are journeyman barbers and members of the International Journeymen Barbers’ Union; that relator is a master barber and a member of the Associated Master Barbers and Beauticians of America,, an association of barber and beauty shop owners and managers. The defendant, Frank Blazina is also a
 
 *64
 
 journeyman barber and a member of tbe International Journeymen Barbers’ Union, and is not a master barber; that if said Frank Blazina is permitted to serve as a member of the Board of Barber Examiners, the makeup of said board would consist of three journeymen barbers, contrary to the provision of Section 1081-1 Ohio General Code requiring the makeup of said board to consist at all times of at least one journeyman barber and one master barber.”
 

 The answer avers:
 

 “Defendant [respondent] says further that he is a master barber; that he is a practical barber and that" he followed the occupation of barber, in this state, for at least five years prior to his appointment as a member of the Board of Barber Examiners.”
 

 The sole question to be decided in this case is whether the appointment of respondent to the board in place of relator resulted in no member of the board being a master barber.
 

 In his deposition, Fred Mourey, a member of the Board of Barber Examiners, testified that he was and is a journeyman barber — an employee in a barber shop — and was such when appointed to the board.
 

 In his deposition, Wilford C. Eobinson, the relator, stated that at the time of his appointment to the board he was a master barber, a member of an organization known as the Master Barbers of Columbus, Chapter 124, and was the owner of a barber shop in Columbus, Ohio.
 

 In his deposition, Herman Morris, a member of the Board of Barber Examiners since 1946, deposed that he was working as a barber in Youngstown, Ohio, at the time of his appointment, under employment by. Harry Leiner; that'he is, however, the owner of two barber shops in Youngstown, one purchased in 1945 and the other in 1946; that he owned such shops when he was appointed to the board; and that he has “two
 
 *65
 
 fellows” working for Mm. He stated that in his opinion he qualifies as a “master barber.”
 

 Prank Schweitzer, the owner of a barber shop in Cincinnati, who was interested'in the passage of the ‘ * barber bill, ’ ’ said:
 

 “Well, it was our intention that there should at all times be a member of the Associated Master Barbers serving on the board, a member of the Journeymen Barbers’ Union serving on the board, and leave the third appointment to the discretion of the Governor.”
 

 Prank Blazina, the respondent, stated in. Ms deposition that he has been a barber for 34 years; that he has been a licensed barber since the enactment óf the “barber bill;” that he is secretary-treasurer of the Barbers Employers Guild No. 1 of Cleveland, composed of barber-shop owners and operators who employ journeymen barbers; that he is fourth vice:president and a member of the executive board of the State Association of Journeymen Barbers; that for five years prior to January 3, 1947, he had practiced barbering at a barber shop owned by him; that since 1938 he has owned a barber shop in St. Vincent’s Charity Hospital in Cleveland, where he practiced and is practicing barbering and is the employer of a barber working there; that at one time he owned three barber shops; and that he has not worked in the capacity of an employee barber since 1928.
 

 Robert A. Pollock of Canton, Ohio, presently a state senator and who was a member of the House of Representatives in the 90th Ohio General Assembly in 1933, deposed that he was familiar with the so-called “barber bill” and was also familiar with the proceedings leading up to its enactment. In response to a question as to the meaning of the terms “master barber” and “journeyman barber,” he replied:
 

 “Well, master barbers are usually the owners of the shop and the journeymen barbers are working there.”
 

 
 *66
 
 The General Assembly, has not seen fit to define the terms “journeyman barber” and “master barber” as used in Section 1081-1, General Code.
 

 Under the definition of the terms as given by Senator Pollock, it may be that both Herman Morris and Frank Blazina can be classed as “master barbers,” since they both own barber shops and have barbers in their establishments who work under their control.
 

 Upon the evidence offered, this court is unable to say that relator has shown that the appointment of respondent on the Board of Barber Examiners resulted in no member of such board being a master barber.
 

 The prayer of the pétition is denied.
 

 Ouster and induction denied.
 

 Weygandt, C. J., Turner, Matthias, Hart, Zimmerman, Sohngen and Stewart, JJ., concur.