Stewart, J.
There are two questions presented to us for decision :
1. Did the trial court err in submitting to the jury the question whether the cablegram and letter sent by defendant to his 47 business contacts abroad constituted libel per se?
2. If so, were the communications privileged?
In the case of Cleveland Leader Printing Co. v. Nethersole, 84 Ohio St., 118, 95 N. E., 735, Ann. Cas. 1912B, 978, it is stated, as follows, in the second paragraph of the syllabus:
“To constitute a publication respecting a person libelous per se, it must appear that the publication reflects upon the character of such person by bringing him into ridicule, hatred or contempt, or affects him injuriously in his trade or profession.”
If language in a publication has of itself the foregoing effect, then that language constitutes libel per se, and the one so libeled may maintain an action for libel and recover damages, without pleading or proving special damages. In such a libel, malice is presumed and damages' may be allowed for the effect of the libel upon the person libeled. However, in order to constitute libel per se, it must appear that the words in the *554 publication of themselves injuriously affect the person concerning whom they are said. If they can reasonably have another and innocent meaning and are not libelous of themselves, they can not constitute libel per se.
Whether words of a publication are libelous per se is a question for the court.
In Mauk v. Brundage. 68 Ohio St., 89, 67 N. E., 152, 62 L. R. A., 477, the second paragraph of the syllabus reads:
“In an action for libel the question whether the publication is or not libelous per se is a question for the court. And where the publication is claimed to be privileged the question whether or not the occasion gives the privilege, the controlling facts being conceded, is also for the court.”
In the Mauk case the trial court left to the jury the question whether a publication constituted libel per se, and the jury found for the defendant.
This court held it was error to leave that question to the jury, and that the court should have instructed the jury that the publication constituted libel per se.
The principle that whether a publication is libelous per se is a question for the court is repeated in the fourth paragraph of the syllabus in the case of Cleveland Leader Printing Co. v. Nethersole, supra (84 Ohio St., 118).
In the late case of Westropp v. E. W. Scripps Co.. 148 Ohio St., 365, 74 N. E. (2d), 340, Judge Matthias began his opinion as follows:
“The appellant * * * has assigned numerous claims of prejudicial error of the trial court, the most important being the refusal to instruct the jury that the publication complained of was libelous per se.”
In that case, the majority of this court determined that the publication in question was libelous per se, and that, the question being one for the court, it should have so instructed the jury. In the opinion, but not in the syllabus, it is stated as follows:
“It is well settled that in an action for libel the question whether the publication complained of is libelous per se is primarily for the court, and that it is error to submit to the jury the question whether the publication is libelous per se, *555 unless its meaning is so uncertain and ambiguous as to require that tbe construction and meaning be submitted to the jury.”
The above quotation is really the basis for the claim of plaintiff herein, and the decisions of the two courts below, that, where there is a publication innocent on its face but claimed to be defamatory by innuendo, a jury question is presented as to whether such publication is libelous per se.
We are of the opinion that such statement does not support the conclusion at which the courts below arrived.
We adhere to the Ohio doctrine, which is the majority doctrine, that, 'where words of a publication are not uncertain and ambiguous as to their definition, it is a question for the court whether they constitute libel per se.
Although we do not so decide, it might be contended that, if the words themselves are uncertain and ambiguous as to definition, such as, for instance, a colloqualism used as a description in charging a person with having a loathesome disease, the meaning of which colloqualism is uncertain and ambiguous, there might be a jury question as to the meaning of the words.
In the cablegram it is stated that defendant found it desirable to terminate the employment of plaintiff.
“Terminate” is not a word bringing any person into ridicule, hatred or contempt or affecting him injuriously in his trade or profession. “Terminate” means an ending and can be, and frequently is, accomplished by mutual consent. In fact, that was true in the present case. Plaintiff resigned, and defendant, obviously finding his resignation desirable, accepted it and thereby terminated the employment. The remaining portion of the letter, on its face, has no reference whatsoever to plaintiff. It is language concerning which the trial court said as follows:
“We are constrained to add, however, that although the jury found the words libelous, there was nothing startling nor aggravated about them. In fact, they were scarcely more than an ordinary business announcement, containing some salesmanship, with a view to the retention by defendant of his existing patronage. Defendant says plaintiff threatened to solicit the business which he had managed as defendant’s employee. The fact that he subsequently did so lends credence to this assertion.”
*556 We have said that it is the law that, where the words of a publication are not of themselves ambiguous and do not of themselves, or per se, reflect upon a person’s character or affect him injuriously in his trade or profession, such words do not constitute libel per se. If the court can not determine a publication to be libelous per se as a matter of law, it may not allow the jury to do so as a matter of fact.
We come now to a discussion of another kind of libel, to wit, libel per quod.
Libel per quod may occur where a publication, which, of itself, or per se, is not libelous, becomes so by the use of an innuendo rendering the apparently harmless words into libelous ones by extrinsic evidence or, as is said, aliunde, as distinguished from per se.
In the present case, plaintiff claims that the cablegram and letter, although they do not of themselves proclaim that defendant had discharged plaintiff for lack of professional competence, were capable of suggesting to a reasonable reader that defendant had discharged plaintiff for such reason; that it was proper to submit that question to the jury; and that, if the jury found that a reasonable reader could find the words libelous, the publication was libelous per se.
We are unable to approve such doctrine. It constitutes a contradiction of terms. Libel per se means libel of itself, or upon the face of a publication, whereas libel per quod is libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one.
If a publication can by innuendo be construed to be either nonlibelous or libelous, the question may be submitted to a jury provided special damages have been pleaded and proved by the one claiming libel. There can be no maintenance of an action for libel per quod in the absence of proof of special damages. Cleveland Leader Printing Co. v. Nethersole, supra (84 Ohio St., 118).
The court must determine whether the publication can be reasonably construed by innuendo to be libelous, and, since the office of the innuendo is merely to explain, authorities agree that it can not be used to aver a fact, introduce new matter, or alter, enlarge, extend or restrict the import of the language theretofore set out. 33 American Jurisprudence, 220, Section 241.
*557 Assuming that the publication in the present case though innocent on its face may, by innuendo, be reasonably interpreted to be libelous, such libel must be per quod and not per se.
From what we have said, three principles stand out.
1. Where the words of a publication are not ambiguous or uncertain as to their definition, it is the sole function of the court to determine whether such publication is libelous per se.
2. It is the sole function of the court, where a publication innocent on its face is claimed to be libelous by innuendo, to determine whether such claim can be so reasonably justified as to present a question for the jury.
3. If a publication is not libelous per se but only per quod, such publication is not actionable in the absence of proof of special damages to the one claiming to be libeled.
In 53 Corpus Juris Secundum, 43, Section 8, it is said:
“Words defamatory per se carry the presumption of falsity * * * of damages * * * and of malice * * * unless published on a privileged occasion * * *. Words which are defamatory per se do not need an innuendo * * * and, conversely, words which do need an innuendo are not dafamatory per se, but per quod. ’ ’
To support this statement cases are cited from the federal courts and the courts of nine states. See Shaw Cleaners & Dyers, Inc., v. Des Moines Dress Club, 215 Iowa, 1130, 245 N. W., 231, 86 A. L. R., 839.
We believe this to be a sound statement of the law. However, it must be noted that the pleading of innuendo in an action for libel may be treated as surplusage, where the words employed in the publication are unequivocal and actionable per se. Westropp v. E. W. Scripps Co., supra (148 Ohio St., 65).
It is conceded that the strongest claim plaintiff in the present case can make is that, although the offending language is susceptible of an innocent interpretation, it is also susceptible of a libelous meaning. If such is the case, that language is not actionable per se. Peabody v. Barham, 52 Cal. App., 581, 126 P. (2d), 668.
Since, in the present case, it is conceded that the court could not, as a matter of law, charge the jury that the language complained of constituted libel per se, for the reason that the *558 claimed libelous character needs an innuendo for its determination, and since it is conceded that plaintiff neither pleaded nor proved special damages, it is obvious that it was the duty of the trial court to instruct a verdict for defendant, and that it was error for it to overrule a motion for judgment notwithstanding the verdict, and for the Court of Appeals to affirm such judgment of the trial court.
Because of the conclusion at which we have arrived, it is not necessary to consider the question whether the communications complained of in the present case were privileged.
The judgment of the Court of Appeals is reversed, and final judgment is rendered for defendant.

Judgment reversed.-

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taet, JJ., concur.