ONDERKO, APPELLEE, *v.* RICHMOND MANUFACTURING COMPANY, APPELLANT.

[Cite as Onderko *v.* Richmond Mfg. Co. (1987), 31 Ohio St. 3d 296.]

(No. 86-1533—Decided July 15, 1987.)

*Miller & Tolaro Co., L.P.A., Alfred J. Tolaro* and *James L. Deese,* for appellee.

*Vorys, Sater, Seymour & Pease, Edgar A. Strause* and *Patricia A. Davidson,* for appellant.

DOUGLAS, J. The first question raised by this appeal is whether the trial court erred in instructing the jury that if it finds that appellee had assumed the risk of his injury, the jury should proceed to apply comparative negligence principles to determine the proportionate fault of each of the parties, and render a general verdict for appellee if his share of the responsibility is found to be fifty percent or less. We find that this was error and, accordingly, we reverse and remand for a new trial.

The pertinent portion of the trial court's instructions to the jury reads:

"* * * What is an assumption of risk? Although contributory negligence, if any, by the plaintiff is not a defense available to the defendant, assumption of risk is. Assumption of risk consists in voluntarily and unreasonably proceeding to encounter a known danger. That is, if the plaintiff discovers or knows of a defect and is aware of a danger and nevertheless proceeds unreasonably to make use of the product and is injured by it, *he is barred from recovery. * * *"* (Emphasis added.)

Later in the charge, the judge instructed the jury that:

"* * * Under the law as I've previously attempted to explain to you, you will determine the total amount of damages that the plaintiff, James Onderko, has sustained regardless of who or which party caused them. Then in the event that you find that the plaintiff, James Onderko, assumed a risk as previously explained, to what extent did the assumption of risk contribute to his injuries. Then you would go on to decide in what percentage defendants are responsible, if they are, and the percentages should total 100%. If the plaintiff's alleged assumption of risk proximately caused his injuries to an extent more than 50%, you would return a general verdict for the defendants. If you find on the contrary that his negligence, assumption of risk, if any, was 50% or less as to the proximate cause of his injuries and the consequent damages, you will enter a general verdict for the plaintiff.

"Now, based on the percentages you find, the Court will compensate [*sic*] the amount of damages, if any, to be awarded. More simply put, decide his damages, apportion the responsibility in percentages which will total a hundred, and then the Court will do the mathematical computation. * * *."

The internal inconsistency of these instructions is manifest. The jury is first told that if appellee assumed the risk of his injury, *he is barred from recovery.* Later the jury is told that assumption of the risk *merely reduces the judgment* if the assumption of the risk constitutes fifty percent or less

of the total responsibility for the injury. Obviously, these two instructions are completely irreconcilable. For the following reasons, we find the instruction that assumption of the risk is a complete bar is the correct charge.

In the interval between our acceptance of this appeal for review and its disposition today, this court decided the case of *Bowling* v. *Heil Co.* (1987), 31 Ohio St. 3d 227, 31 OBR 559, 511 N.E. 2d 373, which resolved the issue of the relevance of comparative negligence in actions based on strict liability. We held:

"The principles of comparative negligence or comparative fault have no application to a products liability case based upon strict liability in tort." *Id.* at paragraph one of the syllabus.

Of further significance is our statement that "an otherwise strictly liable defendant has a complete defense if the plaintiff voluntarily and knowingly assumed the risk occasioned by the defect," citing, *inter alia*, 2 Restatement of the Law 2d, Torts (1965) 356, Section 402A, Comment *n*.[1] *Bowling, supra*, at 282, 31 OBR at 563, 511 N.E. 2d at 377.

Thus, under the law as it currently exists, only the first portion of the trial court's instruction as quoted *supra* was correct. Voluntary and unreasonable assumption of a known risk posed by a product constitutes an absolute bar to recovery in a products liability action based upon strict liability in tort. The remaining portion, instructing the jury that if it found that appellee had assumed the risk, it was to apportion the responsibility for the accident among the parties and render a verdict for appellee if his responsibility amounted to fifty percent or less, is clearly inconsistent with our recent holding in *Bowling*. Moreover, it is clearly incompatible with the earlier portion of the charge that assumption of the risk is a complete bar.

On the subject of conflicting jury instructions, this court has held that "* * * where, in instructing the jury, the court states a correct rule or principle of law and also states an incorrect rule or principle of law with reference to the same subject matter, no presumption arises that the correct rule was applied by the jury in the consideration of the issue presented, and the error in giving the incorrect rule will be deemed prejudicial." *Bosjnak* v. *Superior Sheet Steel Co.* (1945), 145 Ohio St. 538, 31 O.O. 188, 62 N.E. 2d 305, paragraph five of the syllabus. In such a case,

---

[1] Comment *n* to Section 402A provides in pertinent part:

"*Contributory negligence.* * * * Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

reversal of the jury verdict is mandated, and remand for retrial is ordered where the appealing party is not clearly entitled to judgment as a matter of law. *Westropp* v. *E.W. Scripps Co.* (1947), 148 Ohio St. 365, 35 O.O. 341, 74 N.E. 2d 340; *Bosjnak, supra; Marcoguiseppe* v. *State* (1926), 114 Ohio St. 299, 151 N.E. 182.

We are persuaded that, under the circumstances of this case, appellant is not clearly entitled to judgment. Appellant interposed no objection to the trial court's instruction applying comparative negligence principles to appellee's strict liability claim. Moreover, the instruction of the trial court applying comparative negligence principles to a strict liability claim was not clearly erroneous *at the time it was given.* In 1984, when the trial of the instant cause occurred, there was as yet no authoritative pronouncement from this court that comparative negligence principles are inapplicable to such actions. Thus, the trial court was sailing in virtually uncharted waters. It is only with the aid of hindsight that this instruction can be characterized as error at all. We are not inclined to enter final judgment for appellant under these circumstances. However, given the jury's finding that appellee had assumed the risk of his injury, neither are we inclined to let the verdict stand. The subsequent decision of this court in *Bowling* has cast such a different light on this case that justice would not be served either by rendering final judgment for appellant on the record as it stands or by permitting the verdict to remain undisturbed. Remand for a new trial is by far the most appropriate alternative in this case. The parties will then be in a better position to present their evidence with a clear understanding of the consequences of each proven fact. If, on retrial, the trier of fact specifically finds that appellee voluntarily assumed the risk of his injury, appellee will be barred from recovery on his strict liability claim.

At first blush, this absolute bar to recovery may seem unnecessarily or insupportably harsh. It must be remembered, however, that this foreclosure of recovery on a strict liability theory does not deprive an injured plaintiff of all possible remedies. A plaintiff injured by a product is not limited to the theory of strict liability as the sole means of redress. An action in negligence may also be available to compensate the plaintiff for his injury. Strict products liability and negligence are distinct theories, but they have never been regarded as mutually exclusive. Section 402A of the Restatement, *supra,* at Comment *a*[2]; *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227, 35 O.O. 2d 404, 218 N.E. 2d 185, paragraph one of the syllabus. Nor is a plaintiff required to elect between the two theories. *Id.* A case in which the plaintiff alleges strict products liability

---

[2] Comment *a* to Section 402A provides in relevant part:

"* * * The rule stated here is not exclusive, and does not preclude liability based on the alternative ground of negligence of the seller, where such negligence can be proved."

may also be submitted to the factfinder on a negligence theory. 2 American Law of Products Liability 3d (1987) 44, Section 16:31. Thus, a plaintiff whose recovery is barred on a strict liability claim due to a finding that he assumed the risk may still recover on a negligence theory where such negligence can be proved. Section 402A of the Restatement, *supra,* at Comment *a.* In such a case, the plaintiff's assumption of the risk would not necessarily be an absolute bar but would merely operate to reduce his recovery, if the jury finds that such assumption of the risk amounted to fifty percent or less of the total responsibility for the injuries incurred. R.C. 2315.19; *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780.

Appellant raised a second question in this appeal, arguing that the trial court improperly permitted appellee to introduce evidence of prior accidents involving the same product for the purpose of proving that appellant had notice of the alleged defect. However, we do not consider it proper to address this proposition at this juncture, due to the fact that appellee eventually withdrew his negligence claim at trial. Evidence of prior similar accidents, offered to show that a defendant knew or should have known of a product's dangerous propensities, is relevant only to negligence. Such evidence has no bearing in a claim based on strict products liability where its purpose, as here, is to show knowledge or notice of prior accidents. *Eickelberg* v. *Deere & Co.* (Iowa 1979), 276 N.W. 2d 442, 445. To prevail on a strict liability claim, a plaintiff is not required to prove that the defendant was aware of the defect which caused the injury. American Law of Products Liability, *supra,* at 42, Section 16:29. Section 402A of the Restatement, *supra,* expressly approved by this court in *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267, makes no mention of any requirement that the defendant knew or should have known of the defect which caused the injury.[3] Since appellee withdrew his negligence claim, the admissibility of the evidence of prior accidents is not properly at issue.

Accordingly, based on the foregoing, the judgment of the court of ap-

---

[3] Section 402A of the Restatement provides in full:

"Special Liability of Seller of Product for Physical Harm to User or Consumer.

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

peals is reversed, and the cause is remanded to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., concurs.

LOCHER and WRIGHT, JJ., concur in the syllabus and judgment only.

STRAUSBAUGH, J., concurs in the syllabus, and concurs in part and dissents in part.

SWEENEY and HOLMES, JJ., separately dissent.

STRAUSBAUGH, J., of the Tenth Appellate District, sitting for H. BROWN, J.

STRAUSBAUGH, J., concurring in part and dissenting in part. While I am in complete agreement with the majority that the instruction on comparative fault was erroneous, I must respectfully dissent from that portion of the opinion which holds that such error mandates remand for a new trial. In my opinion, judgment should be entered on this record in appellant's favor.

It is undisputed that the jury was correctly instructed on the definition of assumption of the risk. Moreover, there is no contention that the jury incorrectly found appellee to have assumed the risk. Therefore, whether the jury is assumed to have followed either the correct or the incorrect charge regarding the *effect* of assumption of risk on appellee's case, the only party conceivably prejudiced by the error is appellant. As such, given the fact that the jury found appellee to have assumed the risk, it is my belief that judgment should be entered in appellant's favor.

SWEENEY, J., dissenting. Since the advent of comparative negligence in this state several years ago, Ohio is no longer an "all or nothing" jurisdiction with respect to causes of action grounded in tort. In the interests of fundamental fairness, I do not believe that this state should continue to be an "all or nothing" jurisdiction in strict products liability cases. Therefore, I must respectfully dissent from the majority opinion herein.

In *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780, this court merged implied assumption of the risk with the doctrine of contributory negligence for the purposes of the comparative negligence statute, R.C. 2315.19. In *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, 6 OBR 162, 451 N.E. 2d 1185, this court declared that the principles of comparative negligence are part of the common law of Ohio. I

believe that the next logical step for this court to embrace is one that adopts a "pure" comparative fault analysis with regard to the defense of assumption of risk and misuse of a product in strict products liability cases. Under a "pure" comparative fault analysis, no defense would be a total bar to recovery unless a plaintiff's conduct constituted one hundred percent proximate cause of his or her injuries. Thus, a defendant's liability would remain strict.

I agree with the proposition set forth in 2 Restatement of the Law 2d, Torts (1965) 356, Section 402A, Comment *n,* that contributory negligence of the plaintiff is not a defense in a strict products liability case when such negligence consists of merely a failure to discover the defect in the product or to guard against the possibility of its existence. Such a standard should remain the law because consumers should be allowed to assume that a product put in the marketplace is not defective. However, given this court's adoption of comparative negligence as the common law of Ohio in *Wilfong, supra,* I believe that the remainder of Comment *n* should be seriously reexamined. I submit that the application of comparative fault liability to strict products liability actions would add fairness and equity to this area of tort law.

To say that "fault" has nothing to do with the area of strict products liability, and at the same time declare that assumption of risk and misuse of a product remain as absolute bars to a plaintiff's recovery is, in my view, illogical. To say that strict products liability law is a "no-fault" approach in the law is also illogical. Since it is "defectiveness" of a product which underlies a strict products liability cause of action, it cannot be logically stated that such causes of action are not conceptually predicated on fault principles. See Note, Loosing the Shackles of "No-Fault" in Strict Liability: A Better Approach to Comparative Fault (1984), 33 Clev. St. L. Rev. 339.

The problem with the majority's opinion in the cause *sub judice,* and in *Bowling* v. *Heil Co.* (1987), 31 Ohio St. 3d 277, 31 OBR 559, 511 N.E. 2d 373, is that it could prevent the victim of a defective product from obtaining any recovery for injuries sustained on account of the defective product, no matter how slight the plaintiff-victim assumed the risk or misused the product. I believe that adoption of a pure comparative fault analysis in strict products liability cases will dissuade the legal "gymnastics" that courts and juries endure in attempting to categorize a plaintiff-victim's conduct as "assumption of risk" or "contributory negligence" where a plaintiff's conduct plays a significant role in the sustainment of injury. Under the law set forth in *Bowling,* plaintiff's attorneys will almost always characterize their client's conduct as "contributory negligence," since assumption of risk acts as a total bar to recovery. Defense attorneys, on the other hand, will almost always attempt to show that the plaintiff-victim's conduct constituted "assumption of risk" since such a defense, if successful, will prevent any recovery by the plaintiff from their clients.

Under a pure comparative fault analysis, however, once a product defect has been determined to have caused a plaintiff's injuries, a more accurate account of the facts will be promoted, and a fairer and more equitable apportionment of damages will be rendered by the trier-of-fact.

Research indicates a definite trend toward applying comparative fault principles to strict liability actions. See, *e.g., Coney* v. *J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E. 2d 197. I believe that it is time for Ohio to join this growing trend of authority in light of the fundamental fairness that this approach entails. Therefore, even though the trial court did not invoke a pure comparative fault apportionment of damages in this cause, I would affirm the decisions of the lower courts since the award of damages here would have been the same in any event.

HOLMES, J., dissenting. To be consistent with my position taken in *Bowling* v. *Heil Co.* (1987), 31 Ohio St. 3d 277, 31 OBR 559, 511 N.E. 2d 373, I must dissent herein. In *Bowling,* wherein I dissented, I stated in the first two proposed paragraphs that the law of Ohio as pronounced by this court should be:

"1. The general principles of comparative negligence, as set forth within R.C. 2315.19, shall be applied to products liability cases based upon strict liability in tort.

"2. In applying comparative negligence to products liability cases, once the jury has determined that the product defect caused the injury, the defendant is strictly liable for the harm caused by the defective product. The jury, however, must be instructed to reduce the award of damages in proportion to the plaintiff's misconduct which contributed to his own loss or injury."

In support of such proposed syllabus law, I stated that "[t]he extension of comparative liability principles as legislatively set forth in R.C. 2315.19 to actions predicated upon strict liability in tort is consistent with the development of products liability law in Ohio and represents a logical and reasonable extension of this court's decision in *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780 * * * [in which] this court merged the defense of assumption of the risk with the defense of contributory negligence under R.C. 2315.19."

My position in advocating the adoption of the principles of comparative negligence is based upon what I truly feel justice and equity demand in the determination of the causal fault of the injuries sustained, and the fair distribution of the burdens of compensation for such injuries. In these cases the law's goals should be to compare the plaintiff's misconduct with the defendant's defective product. This comparison of liability is a principle which fairness requires both as to plaintiffs and defendant manufacturers.

In *Bowling,* the jury found that the decedent's activities, which had resulted in his death, amounted to thirty percent of the causal factors.

This finding, pursuant to comparative fault principles, should accordingly have lessened the jury award by thirty percent. The majority of this court refused to apply the comparative fault principles and awarded the total verdict to the plaintiff-administratrix.

Here, the trial court gave the jury instructions upon the effect of any assumption of the risk in the plaintiff's conduct. The instructions relative to the bar for recovery, if assumption of the risk were found, were conflicting and did appear to be confusing. However, in response to specific interrogatories the jury found that the plaintiff had assumed the risk of his injury and that such assumption of the risk was a proximate cause of the injury. The jury found that the plaintiff's activities had resulted in twenty-five percent of the causal factors of the plaintiff's injuries. It may reasonably be concluded that the trial court's instruction, although confusing, was indeed understood by the jury.

The trial court then, pursuant to the comparative fault of the parties as found by the jury, reduced the total jury award by twenty-five percent and entered judgment for the plaintiff for $1,875,000. I feel this to be appropriate.

There was also a portion of the trial court's instruction to the jury that directed application of comparative negligence principles to products liability. In that the liability of manufacturers for the production of faulty products is actually a "strict" liability, the plaintiff has what may be considered a *prima facie* case against the defendant whenever the product is shown to be faulty. In that same degree which strict liability attaches to the manufacturer in these cases, it is necessary to apply the "pure" form of comparative negligence. Thus, the plaintiff's entire claim would not be barred in these kinds of cases merely because his negligence went beyond Ohio's fifty percent maximum.

In the present case, the trial court gave the following instructions to the jury: "If the plaintiff's alleged assumption of risk proximately caused his injuries to an extent more than 50%, you would return a general verdict for the defendants. If you find on the contrary that his negligence, assumption of risk, if any, was 50% or less as to the proximate cause of his injuries and the consequent damages, you will enter a general verdict for the plaintiff."

This instruction, as I have indicated previously, would not be in conformity with the application of the principles of comparative fault in product liability cases. However, any error in this regard would not have been reversible since the jury only found the causal fault of the plaintiff to be twenty-five percent.

Overall, both the application of the comparative fault principles by the trial court and approval of such by the court of appeals were meritorious orders. The approach utilized here by both the trial court and the court of appeals represents an intelligent, broad interlacing of the common law and the statutory law in order to effect a just and fair result, both for injured plaintiffs and for defendant manufacturers.