MULLOY, EXR., ET AL., APPELLANTS, v. LONGABERGER, INC. ET AL., APPELLEES.

(No. 87AP-1229—Decided
February 28, 1989.)

*Wolske & Blue, Walter J. Wolske,
Jr.* and *Michael S. Miller,* for appellants.

*Wiles, Doucher, Van Buren &
Boyle Co., L.P.A., Stanley K. Van
Buren, James J. Brudny, Jr.* and
*Christine E. Deken,* for appellees
Longaberger, Inc. and Longaberger
Sales, Inc.

*Crabbe, Brown, Jones, Potts &
Schmidt, Charles Brown* and *David J.
Richards,* for appellee Olympic Paint &
Stains.

BOWMAN, J. In January 1984, appellants, Dennis J. Mulloy and Sandy Mulloy, purchased a large stained basket intended for use as a baby cradle from appellees, Longaberger, Inc., and Longaberger Sales, Inc. ("Longaberger"). The basket was manufactured by Longaberger in late February 1984 and stained either the last day of February 1984 or the first day of March 1984. The basket was delivered to appellants about March 15, 1984, along with a number of other baskets. While unpacking the baskets, appellants noted a strong odor of paint stain and placed the basket, uncovered, in an unheated bedroom where it remained for the next several weeks.

Michael Patrick Mulloy was born April 6, 1984, several weeks premature. On April 12, 1984, he was discharged from the hospital and appellants received custody of him through a private adoption. On April 21, 1984, nine days later, Michael Patrick Mulloy died. During the last two days of his life, the baby exhibited signs of lethargy and a reluctance to eat.

The coroner's office, at first, listed the cause of death as sudden infant death syndrome. In an effort to find a more specific cause of death, appellants took the basket, samples of food, and some of the baby's toys to the coroner's office. The coroner immediately noticed a strong smell coming from the basket that irritated his eyes and ordered testing of the basket and of the tissue samples taken from the baby. Following further toxicological and pathological testing, the coroner concluded that Michael Patrick Mulloy died of "* * * cardiopulmonary arrest due to, or as a consequence of toxic effect of solvent benzene homologues"; that is, in the coroner's opinion, the infant died from inhaling fumes from toxic chemicals in the stain applied to his cradle.

Appellants filed suit against Longaberger, setting forth claims for wrongful death and survivorship based on negligence, strict liability, and breach of express warranty. Longaberger filed a third-party complaint against Olympic Paint and Stain Company ("Olympic"), alleging claims for strict liability, negligence and breach of express and implied warranties.

The jury rendered a verdict in favor of Longaberger and, since it found in favor of Longaberger, made no finding as to Olympic. Appellants' motion for a new trial was overruled

and they have appealed, setting forth the following assignments of error:

"I. The trial court improperly and prejudicially instructed the jury on the defense of assumption of risk.

"II. The trial court improperly and prejudicially prevented cross-examination into the existence of other claims of injury as a result of inhalation of toxic aromatic hydrocarbons."

Appellants contend that the court erred in instructing the jury on assumption of the risk for the reasons that assumption of the risk cannot be imputed to appellants as sole beneficiaries of Michael Patrick Mulloy, and insufficient evidence existed to support the charge. Appellees argue that if the contributory negligence of a beneficiary is a bar to recovery, assumption of the risk is likewise a bar to recovery. Further, appellees argue that there was sufficient evidence to create an issue of fact as to assumption of the risk and it was proper for the court to so charge the jury.

While contributory negligence and assumption of the risk may overlap in an appropriate case, the two concepts are separate and distinct defenses. Black's Law Dictionary (5 Ed. 1979) 113, defines "assumption of risk" as follows:

"The doctrine of assumption of risk, also known as volenti non fit injuria, means legally that a *plaintiff* may not recover for an injury to which *he assents, i.e.,* that a person may not recover for an injury received when he voluntarily exposes *himself* to a known and appreciated danger. The requirements for the defense * * * are that: (1) the plaintiff has knowledge of facts constituting a dangerous condition, (2) he knows the condition is dangerous, (3) he appreciates the nature or extent of the danger, and (4) he voluntarily exposes *himself* to the danger. * * *" (Emphasis added.)

In *Dunn* v. *Higgins* (1968), 14 Ohio St. 2d 239, 43 O.O. 2d 368, 237 N.E. 2d 386, the Ohio Supreme Court discussed the differences between contributory negligence and assumption of the risk and, in the second paragraph of the syllabus, indicated that assumption of the risk may apply where the evidence indicates an obvious risk to the safety of plaintiff, the injured party, caused by the negligent conduct of the defendant, but acquiesced in by the plaintiff. Thus, by definition, assumption of the risk only applies where the plaintiff is also the person who directly suffered the injury, and not to the third person suing as the result of an injury to another.

Appellees argue that if a beneficiary is not barred from recovery on the basis of assumption of the risk an anomalous situation is created, whereby an injured party could be barred from recovery in a products liability case whereas the beneficiary would not be barred. However, in those circumstances where assumption of the risk is an appropriate defense, the injured party must know of or perceive the risk of harm and acquiesce in possible injury resulting from use of a defective product. One simply cannot encounter or accept a risk on behalf of another person. It may be appropriate to deny an injured party damages resulting from his chosen course of conduct, but a beneficiary who has not evaluated the risks and consequences should not be barred from recovery. The defense of assumption of the risk is not applicable to appellants as the sole beneficiaries of Michael Patrick Mulloy.

Had appellants elected to expose themselves to a known and appreciated danger then the defense of assumption of the risk would be appropriate. However, at most, their conduct constitutes carelessness in regard to another person. Since contributory negligence is not a defense to

a strict liability action, the parents' conduct was improperly taken into account.

Even assuming assumption of the risk was applicable to appellants as the sole beneficiaries, before a jury may be properly charged on assumption of the risk, there must be evidence that the injured party voluntarily and unreasonably assumed a known risk posed by a product, *Onderko* v. *Richmond Mfg. Co.* (1987), 31 Ohio St. 3d 296, 31 OBR 576, 511 N.E. 2d 388, or that the danger was so obvious that he must have known of it, *Ricks* v. *Jackson* (1959), 169 Ohio St. 254, 8 O.O. 2d 255, 159 N.E. 2d 225. In deciding *Onderko,* the court relied on 2 Restatement of the Law 2d, Torts (1965) 356, Section 402(A), Comment *n,* which states:

"* * * On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

Therefore, in order for appellees to be entitled to a charge of assumption of the risk, there must be sufficient evidence to show that the Mulloys knew of the danger from inhaling aromatic hydrocarbons or the risk was obvious and yet proceeded to use the basket. That is, there must be evidence to show that the Mulloys knew, or it was obvious, that the odor from the basket was toxic and its continued use could result in serious harm or death. The evidence in the record is insufficient to support such a finding. Both appellants noticed an odor when the boxes were unpacked and Mrs. Mulloy had, at one time, worked in an antique store refinishing furniture and had refinished furniture at home. However, neither appellant was asked if he was aware of the toxic nature of the fumes from paint stains or if, in using stain around the home or at work, he had become ill or suffered any detrimental physical effects.

To properly charge the jury on assumption of the risk, appellants would have to be aware not only of the odor but that the odor had, or was indicative of, possible toxic effects.

A realistic appraisal of the evidence clearly indicates the actions of the parents were, at most, careless and did not involve a voluntary exposure of the baby to an appreciated danger. The evidence shows the parents were desperately trying to find an answer to the problems they saw the baby was experiencing, as shown by repeated phone calls to their doctor and asking advice from a neighbor who had raised several children. Whether they should have thought about it or not, they definitely had not associated any problems that the baby was having with the basket. What occurred in this case is one of the reasons contributory negligence was eliminated as a defense to a products liability claim based on strict liability. The parents assumed that a basket, known to be stained, that was supplied by a manufacturer for use as an infant cradle would contain no harmful properties that would injure the baby. This assumption probably contributed to the fact that the parents failed to pinpoint the basket as a potential cause of the difficulties, if in fact it was. Even if assumption of the risk was a possible defense in this case, which it is not, there was simply no evidence to create a question of fact as to assumption of the risk and it was error to give such a charge.

Appellees further argue that, even if the assumption of the risk instruction was improper, since the jury

returned a general verdict without interrogatories, application of the "two-issue rule" precludes reversal. However, in *Ricks, supra,* the court held, at paragraph four of the syllabus:

"The so-called two-issue rule does not apply where there is a charge on an issue upon which there should have been no charge."

Inasmuch as we have concluded the instruction on assumption of the risk was improper and should not have been given, the two-issue rule is not applicable and appellants' first assignment of error is sustained.

In their second assignment of error, appellants contend that the court erred in restricting their right to cross-examine a witness called by Olympic as to other claims involving injury resulting from the inhalation of aromatic hydrocarbons. The trial court had sustained a motion *in limine* filed by Olympic to preclude evidence of prior claims, yet Olympic asked on direct examination of its witness:

"Q. My question was in your thirty plus years of experience with Olympic Stain, have you ever heard of a claim such as this, and you know what it's about now, that is being made against Olympic Paint Company.

"* * *

"A. I have no knowledge of that."

On cross-examination the witness was asked:

"[MR. WOLSKE]: You [were] asked if there had been claims made against the company for an instance where somebody had been injured by the, by the inhalation of any aromatic hydrocarbons that were in your stains?

"THE WITNESS: I don't believe that to be true.

"* * *

"Q. Now, isn't it true in your security and exchange filing where the company files with the S.E.C. here, that they list lawsuits —[.]"

Olympic objected and the court sustained the objection.

In *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 17 O.O. 3d 98, 407 N.E. 2d 490, the court held that the regulation of admission of evidence during cross-examination is within the discretion of the trial court and such a ruling will not be disturbed absent an abuse of discretion and a showing that the party complaining of the error was prejudiced. The evidence elicited from the witness was not that similar claims had never been filed but, rather, that the witness had no knowledge of such claims and that, as a manufacturing manager for Olympic, it was not within the performance of his job duties to have such knowledge. Other than to argue that appellants should have been allowed to continue to cross-examine the witness who had previously stated that he had no knowledge of prior claims or lawsuits, appellants have not demonstrated how they were prejudiced by the court's ruling. Further, the case was submitted to the jury on a theory of strict liability and evidence of other similar accidents or claims is not relevant. *Onderko, supra.* The court did not abuse its discretion and appellants' second assignment of error is overruled.

Olympic filed a notice of cross-appeal and sets forth the following assignments of error:

"I. The trial court erred in refusing to grant a directed verdict in favor of Olympic at the conclusion of Longaberger's case against it.

"II. The court erred in excluding from the evidence the official records of the Consumer Product Safety Commission."

In response to the notice of cross-appeal, Longaberger filed a motion to dismiss on the basis that the notice of cross-appeal was not timely filed. App. R. 4(A) provides in part:

"In a civil case the notice of appeal

required by Rule 3 shall be filed with the clerk of the trial court within thirty days of the date of the entry of the judgment or order appealed from. * * * A notice of appeal filed before entry of such judgment or order shall be treated as filed after such entry and on the day thereof. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this subdivision, whichever period last expires.''

The judgment entry was filed by the trial court on November 24, 1987, and appellants' notice of appeal was filed on December 23, 1987. Olympic filed its notice of cross-appeal on January 5, 1988, more than ten days from the filing of the notice of appeal.

Olympic argues that App. R. 4(A) must be read in conjunction with App. R. 3(D), which provides:

"The clerk of the trial court shall serve notice of the filing of a notice of appeal and, where required by local rule, a docketing statement, by mailing a copy thereof to counsel of record of each party other than the appellant, or, if a party is not represented by counsel, to the party at his last known address; and the clerk shall mail or otherwise forward a copy of the notice of appeal and of the docket entries, together with a copy of all filings by appellant pursuant to Rule 9(B), to the clerk of the court of appeals named in the notice. The clerk shall note on each copy served the date on which the notice of appeal was filed. Failure of the clerk to serve notice shall not affect the validity of the appeal. * * *''

Therefore, Olympic argues that since the clerk did not mail appellants' notice of appeal until January 4, 1988, its cross-appeal was timely filed. However, this argument ignores the clear language in App. R. 3(D) that failure of the clerk to serve the notice does not affect the validity of the appeal. Olympic then cites App. R. 14(C), which provides:

"Whenever a party is required or permitted to do an act within a prescribed period after service of a paper upon him and the paper is served by mail, three days shall be added to the prescribed period.''

Olympic also argues, since appellants' notice of appeal was mailed on December 23, three additional days are to be added to the time in which Olympic had to file its cross-appeal. Again, the language of App. R. 4(A) is clear that the time for filing a notice of cross-appeal begins to run with the filing of the notice of appeal, not service of the notice of appeal.

In *Kaplysh* v. *Takieddine* (1988), 35 Ohio St. 3d 170, at 175, 519 N.E. 2d 382, at 386-387, the court held:

"* * * Because a cross-appeal is a separate attempt by an appellee to enlarge his own rights or lessen the rights of his adversary, we hold that the time requirements for filing a cross-appeal pursuant to App. R. 4(A) are mandatory and jurisdictional. Therefore, a court of appeals does not acquire jurisdiction over belated cross-appeals merely because an appeal by an opposing party has been properly perfected. * * *''

Therefore, although Olympic's cross-assignments of error appear to have merit, its notice of cross-appeal was not timely filed and the motion to dismiss is sustained.

For the foregoing reasons, appellants' first assignment of error is sustained and the second assignment of error is overruled. The judgment of the trial court is reversed and this matter is remanded for further proceedings in accordance with this opinion. Longa-

berger's motion to dismiss is sustained, and Olympic's cross-appeal is dismissed.

*Judgment reversed*
*and cause remanded;*
*cross-appeal dismissed.*

McCORMAC, P.J., and REILLY, J., concur.