AVILÁ, Appellant,

v.

**QUESTOR JUVENILE FURNITURE COMPANY et al., Appellees.**

[Cite as *Avila v. Questor Juvenile Furniture Co.* (1991), 74 Ohio App.3d 597.]

Court of Appeals of Ohio,
Marion County.

No. 9–90–16.

Decided June 18, 1991.

**598**

*Frank A. Ray* and *Andrea R. Yagoda,* for appellant.
*Ted L. Earl,* for appellees.

SHAW, Judge.

Plaintiff-appellant, Simon Avila, Jr., Administrator of the Estate of Rachel Nicole Avila, appeals from a judgment rendered in the Court of Common Pleas of Marion County upon a jury verdict returned in favor of defendants-appellees, Questor Juvenile Furniture Co. and Evenflo Juvenile Furniture Co. This is a wrongful death action, based on the tort theory of strict products liability, wherein appellant sought to recover compensatory damages on behalf of the estate of Rachel Nicole Avila. Pauline Avila Meyer was the mother of Rachel and the beneficiary of the wrongful death action.

The complaint alleged that fifteen-month-old Rachel Nicole Avila was killed in a car accident and that the proximate cause of the injuries that resulted in Rachel's death was a manufacturing or design defect in the Bobby Mac Deluxe II, an infant car seat in which Rachel was restrained at the time of the car accident. The complaint further alleged that the Bobby Mac Deluxe II was manufactured by appellees. Appellant assigns three errors to the judgment of the trial court.

In his first assignment of error, appellant asserts that the jury instructions given by the trial court were erroneous in two respects. First, it is appellant's contention that the trial court erred by instructing the jury on the defense of assumption of the risk as pertains to the conduct of the mother and beneficiary of the decedent, Pauline Avila Meyer.

With respect to the conduct of the beneficiary in this case, the facts are not in serious dispute. In expectation of the birth of her first child, Pauline Avila purchased the Bobby Mac Deluxe II infant car seat on July 14, 1984. As purchased, the Bobby Mac Deluxe II consisted of two separate parts, the car

seat shell and a safety shield. An instruction pamphlet furnished with the car seat instructed the user that the car seat, when holding a child from birth weight to seventeen pounds, should be placed in the automobile seat with the child facing the rear of the vehicle. In the rear-facing position, the car seat shoulder harness and the automobile lap belt secured the infant in place. The detachable safety shield was not to be used in the rear facing position.

Once the child attained the weight of seventeen pounds, the car seat was to be turned to the forward-facing position. In this position, the safety shield was to be attached by the consumer and the child was to be restrained with the automobile lap belt across the safety shield in addition to the car seat shoulder harness.

The instruction pamphlet also contained the following warning:

"Safety Shield must be used in forward facing position with auto lap belt over shield as shown. Failure to use shield and auto lap belt properly may allow your child to strike the car's interior in the event of an accident."

In addition, the instruction pamphlet included an address and two telephone numbers where the consumer could write or phone the manufacturer and an order form for replacement parts for the car seat. It is undisputed that Pauline Avila Meyer read the instruction pamphlet and was aware of the warnings and other information contained therein.

Rachel Avila was born on September 28, 1984. Several months before the car accident, Pauline determined that Rachel had attained the appropriate weight to utilize the car seat in a forward-facing position. However, when Pauline and others attempted to place the safety shield on the car seat they found that it would not fit onto the car seat as described in the instruction pamphlet. Pauline did not attempt to return the car seat to the seller, contact the manufacturer or order a replacement safety shield.

Pauline proceeded to utilize the seat in a forward-facing position without the safety shield. In the belief that the child would be safe, Pauline secured Rachel with the shoulder harness and the automobile lap belt, just as she had done in the rear-facing position.

On December 19, 1985, the car operated by Pauline, and in which Rachel was a passenger, went off the road and hit two trees. Rachel died as the result of "flail chest," a condition caused by an excessive number of broken ribs. The evidence suggests that the severity of Rachel's injuries would have been diminished or avoided if the safety shield had been used properly.

Turning then to the question of whether assumption of the risk by the beneficiary of a wrongful death action bars recovery, appellant directs our attention to the case of *Mulloy v. Longaberger, Inc.* (1989), 47 Ohio App.3d

77, 547 N.E.2d 411. In *Mulloy,* plaintiffs-parents filed an action for the wrongful death of their infant son, alleging that his death was caused by a chemical used in the manufacture of his cradle basket. The action proceeded upon, *inter alia,* the tort theory of strict products liability. The manufacturer interposed the affirmative defense of assumption of the risk, contending that the parents were made aware of the risk by the odor of the chemical emanating from the basket when it was delivered to them. The trial court instructed the jury on assumption of the risk based on the conduct of the parents. The jury returned a verdict for the manufacturer.

The Franklin County Court of Appeals reversed the judgment upon concluding that the jury instruction was improper. The court's reasoning in concluding that the instruction was improper is reflected by the following language:

" * * * [B]y definition, assumption of the risk only applies where the plaintiff is also the person who directly suffered the injury, and not to the third person suing as a result of an injury to another." *Id.* at 79, 547 N.E.2d at 414.

" * * * One simply cannot encounter or accept a risk on behalf of another person." *Id.*

The court further reasoned that:

"Had appellants [the parents] elected to expose themselves to a known and appreciated danger then the defense of assumption of the risk would be appropriate. However, at most, their conduct constitutes carelessness in regard to another person. Since contributory negligence is not a defense to a strict liability action, the parents' conduct was improperly taken into account." *Id.* at 79–80, 547 N.E.2d at 414.

Thus, the holding in *Mulloy* is relied upon by appellant herein for the proposition that, as a matter of law, assumption of the risk, based on the conduct of a beneficiary, is not available as a defense to bar recovery in a wrongful death action premised on strict products liability. For the reasons that follow, we approve of the holding in *Mulloy* and hereby adopt the rationale of the Franklin County Court of Appeals in that case.

The Supreme Court of Ohio, in *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 282, 31 OBR 559, 563, 511 N.E.2d 373, 377, stated the two affirmative defenses based on the plaintiff's misconduct that are currently recognized in the law of Ohio governing strict products liability: "First, an otherwise strictly liable defendant has a complete defense if the plaintiff voluntarily and knowingly assumed the risk occasioned by the defect. [Citations omitted.] Second, such a defendant is also provided with a complete defense if the plaintiff misused the product in an unforeseeable manner. [Citations omit-

ted.]" See, also, *Onderko v. Richmond Mfg. Co.* (1987), 31 Ohio St.3d 296, 31 OBR 576, 511 N.E.2d 388, syllabus.

■ "Assumption of the risk requires three elements: One must have full knowledge of a condition; such condition must be patently dangerous to *him;* and he must voluntarily expose *himself* to the hazard created." *Briere v. Lathrop Co.* (1970), 22 Ohio St.2d 166, 174–175, 51 O.O.2d 232, 237, 258 N.E.2d 597, 603. The foregoing definition of assumption of the risk is reflective of the numerous cases that we have reviewed from Ohio, as well as other jurisdictions, which have, without specifically considering the issue now before us, consistently applied assumption of the risk or referred to the defense as a bar to the person who *directly* suffered the injury.

In its consideration of the affirmative defenses available to a defendant in a products liability action based on strict liability, the Supreme Court of Ohio concluded that " * * * contributory negligence has no place in products liability cases based upon strict liability in tort." *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 111, 554 N.E.2d 1313, 1317. Indeed, the court has rejected the view that the plaintiff's negligence should be considered in strict products liability cases whether as a complete bar to the action, as in the defense of contributory negligence, or as means of reducing the plaintiff's recovery based on a comparison of the parties' relative degrees of fault. *Id.* at 111, 554 N.E.2d at 1317.

The rationale behind the rejection of fault principles in the area of strict liability is based on the following public policy concerns expressed by the court in *Bowling, supra,* 31 Ohio St.3d at 284, 31 OBR at 565, 511 N.E.2d at 378:

"Under negligence principles, * * * liability is determined (and, under R.C. 2315.29, apportioned) according to *fault.* In negligence, we seek to make the person or persons responsible for causing a loss pay for it. In other words, we 'blame' the loss on the negligent party or parties because it was they who could have avoided the loss by conforming to due care. Conversely, in strict liability in tort we hold the manufacturer or seller of a defective product responsible, not because it is 'blameworthy,' but because it is more able than the consumers to spread that loss among those who use and thereby benefit from the product." (Footnote deleted; emphasis *sic.*)

■ Therefore, in the case presently under consideration, we hold that the trial court's charge to the jury regarding Pauline's assumption of the risk was improper because the defense was not available as a matter of law. Furthermore, because an assumption of the risk instruction was not a proper charge, the jury instruction, in the vein given, improperly interjected the issue of

Pauline's negligence into the jury's deliberations. In our judgment, this result is directly contrary to the rule in Ohio that " * * * principles of comparative negligence or comparative fault have no application to a products liability case based upon strict liability in tort." *Bowling, supra,* at paragraph one of the syllabus.

We turn now to a consideration of the second argument presented by appellant under this assignment that the instruction by the trial court as to the affirmative defense of misuse of the product with respect to Pauline's conduct was improper. The record reflects that appellant objected to the misuse instruction at trial as improperly imputing Pauline's alleged misuse of the car seat to the victim. Appellant argued in the trial court, and before this court on appeal, that given the facts of this case, such an instruction was improper as a matter of law under *Mulloy.*

However, the issue of unforeseeable misuse was neither before the court in *Mulloy,* nor even remotely addressed therein. Moreover, we understand relevant authority to recognize that human intervention, even in the form of third-party conduct, is sufficient to break the causal connection between the defective product and the injury only if the intervening act is unforeseeable and *completely eliminates* the effect of the defective manufacture or design. *R.H. Macy, supra,* 51 Ohio St.3d at 111, 554 N.E.2d at 1316. See, also, *Bowling, supra,* at paragraph two of the syllabus. Thus, as a matter of law, an instruction on unforeseeable misuse was not improper.

Although appellant on appeal now also objects to the substance of the misuse charge given in this case, our review of the record reflects that, at trial, appellant failed to object to the content of the charge as given. Thus, appellant failed to properly preserve for appellate review any alleged error pertaining to the substance of the particular misuse instruction given herein. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 65 O.O.2d 129, 303 N.E.2d 81.

Nevertheless, upon finding that it was error to give the charge with regard to assumption of the risk, we sustain appellant's first assignment of error and reverse the judgment of the trial court.[1]

In his second assignment of error, appellant contends that the jury's viewing of an out-of-court videotaped experiment was prejudicial error. To be

---

1. As to appellees' argument that even if the assumption of the risk charge was improper, since the jury returned a general verdict without interrogatories, the "two-issue rule" precludes reversal, we direct appellees' attention to *Ricks v. Jackson* (1959), 169 Ohio St. 254, 8 O.O.2d 255, 159 N.E.2d 225, paragraph four of the syllabus, which states that the "so-called two-issue rule does not apply where there is a charge on an issue upon which there should have been no charge."

certain, appellees' compliance with Evid.R. 902, 602 and 703 in this case can only be described as lax. Nevertheless, there was some compliance with the rules and we do not find that the trial court's display of the videotape constituted an abuse of discretion. Moreover, upon review of the tape, we do not find that appellant was unfairly prejudiced by its substance. Accordingly, appellant's second assignment of error is overruled.

In the third assignment of error, appellant contends that the jury verdict was against the manifest weight of the evidence. However, inasmuch as the cause is reversed and remanded to the trial court for a new trial, any comments as to the sufficiency of the evidence in this case would amount to *obiter dicta* and should be avoided. Our reluctance to comment upon the sufficiency of the evidence as dicta must be distinguished from our determination of the admissibility of the videotape under the second assignment insofar as the issue of the admissibility of that evidence is likely to arise upon retrial. See *Parton v. Weilnau* (1959), 169 Ohio St. 145, 8 O.O.2d 134, 158 N.E.2d 719. Accordingly, the third assignment of error is overruled.

For the reasons stated and upon the authorities cited and discussed, the judgment of the Court of Common Pleas of Marion County is reversed and this matter is remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT, P.J., and EVANS, J., concur.