OPINION
Defendant-appellant, Comet Automation Systems, Inc. ("Comet"), appeals a jury verdict in favor of plaintiffs-appellees, Thomas and Kathleen Roush, in a product liability action.
Thomas Roush ("Roush") was employed as a janitor in the Thatcher Tubes ("Thatcher") plant. He was injured October 3, 1993 when he attempted to unclog a portion of a regrind collection system. Roush inserted his hand under the bin portion of a machine and into the rotating vanes of a rotary airlock. Roush's index finger was cut off at the first knuckle and he lost a small part of the tip of his thumb.
The machine that injured Roush was designed to recapture slugs that were produced as a byproduct of a manufacturing process. Thatcher manufactures tubes which are used for toothpaste by the Colgate Company. After receiving complaints from Colgate about finding the slug byproducts in the tubes, Thatcher contacted Comet about the possibility of designing a machine which would recapture the slugs in the manufacturing process.
A machine was designed which incorporated several smaller component parts. The machine system composed of the several parts was termed a "slug sucker." A cyclone hopper which was manufactured by Comet sat at the top of the slug sucker. Underneath the hopper was a rotary airlock which was manufactured by Wm. W. Meyer Sons Inc. Underneath the airlock was a bin, which was manufactured by International Material Control Systems, Inc. ("IMCS") and sold by Comet as part of its product line. On the top left side of the machine was a regrind hopper which was manufactured by Comet and was part of a system to collect another byproduct of the manufacturing process. Comet obtained all the component parts for the slug sucker and shipped them to Thatcher, who assembled the machine.
Roush was injured when he reached into the bin and stuck his hand in the rotary airlock in an attempt to dislodge material which had become clogged. Roush and his wife, Kathleen, filed a product liability action on September 28, 1995. The complaint named three defendants: Thatcher's parent company, Courtaulds Packaging, Inc. ("Courtaulds"), IMCS, and John Doe Corporation. In its answer, Courtaulds contended that the machine at issue was incorporated and designed into a recycling system by a third-party vendor. An amended complaint named Comet, the third party vendor, as a defendant. Both ICMS and Courtaulds were dismissed from the action and the case proceeded against Comet alone.
A jury trial was held on August 3-7, 1998. The jury ruled in favor of Roush and his wife and awarded damages. The trial court overruled Comet's motions for judgment not withstanding the verdict and for a new trial, and a final judgment was entered on February 9, 2000.
Comet appeals the final judgment of the trial court and raises five assignments of error. The first assignment of error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY INSTRUCTING THE JURY ON SUPPLIER LIABILITY WHEN COMET WAS NEITHER THE MANUFACTURER NOR SUPPLIER OF THE REGRIND COLLECTION SYSTEM.
 In its first assignment of error, Comet contends that the trial court erred by giving a jury instruction on supplier liability. Comet argues that there is no evidence to support c liability under any of the statutory supplier liability provisions. Requested jury instructions should be given if they are correct statements of the law as applicable to the facts of the case. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585. In reviewing a record to ascertain whether sufficient evidence exists to support the giving of an instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. Goldfuss v. Davidson
(1997) 79 Ohio St.3d 116, 124.
The trial court instructed the jury on supplier liability pursuant to R.C. 2307.78(B). This section states:
 A supplier of a product is subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code, as if it were the manufacturer of that product, if the manufacturer of that product is or would be subject to liability for compensatory damages based on a product liability claim under sections 2307.71 to 2307.77 of the Revised Code and any of the following applies:
* * *
 (5) The supplier created or furnished a manufacturer with the design or formulation that was used to produce, create, make, construct, assemble, or rebuild that product or a component of that product.
 (6) The supplier altered, modified, or failed to maintain that product after it came into the possession of, and before it left the possession of, the supplier, and the alteration, modification, or failure to maintain that product rendered it defective.
 (7) The supplier marketed that product under its own label or trade name.
 Although the parties dispute whether Comet was involved in the design of the slug sucker, evidence was presented from which reasonable minds could conclude that Comet was involved in the design of the machine as contemplated by R.C. 2307.78(B)(5). Tom Rajkovick, owner of Comet, testified that he was part of a brainstorming session with Courtaulds to determine how they could reclaim slugs. Rajkovick also testified that he directed IMCS to reinforce the bin to support the weight of the airlock and hopper, and that he supplied the bolt configuration for the bin to IMCS. Comet also had design drawings of a possible configuration of the machine sketched, and prepared assembly drawings of the various component parts. Alan Baxter, a vice president of Courtaulds, testified that Comet was charged with responsibility for the whole project and was responsible for design. According to Baxter, Thatcher told Comet what they wanted to do and Comet came up with the design.
There is also some evidence to support liability under 2307.78(B)(6) and (7). While Comet argues that it did not install the slug sucker in the Thatcher Tubes plant, Comet admits that it began assembly by attaching the hopper to the airlock. This assembly altered or modified the airlock from its original condition. In addition, with the exception of the airlock, all of the component parts are marketed under the Comet name. Comet's brochure of the equipment that it manufactures contains the component parts, including the hopper which was attached to the airlock and the bin. The testimony at trial also indicated that the machine was known as "the Comet system" to the employees in the Thatcher plant.
Because there is evidence from which reasonable minds could conclude Comet was a supplier pursuant to R.C. 2307.78(B), the trial court did not err by instructing the jury on supplier liability. Comet's first assignment of error is overruled.
Comet's second assignment of error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO INSTRUCT THE JURY ON IMPLIED ASSUMPTION OF THE RISK AND INTERVENING/SUPERCEDING CAUSE.
 In its second assignment of error, Comet contends that the trial court erred by not instructing the jury on implied assumption of the risk and on intervening/superceding causation. Comet first argues that the trial court erred by refusing to give a requested jury instruction on implied assumption of the risk. Appellant argues that this instruction was warranted because Roush ignored two cardinal safety rules which, if followed, would have prevented the injury.
R.C. 2315.20 states that "implied assumption of the risk may be asserted as an affirmative defense to a product liability claim." R.C.2315.20(B)(1). Implied assumption of the risk occurs when a person has full knowledge of a condition, the condition is patently dangerous to him, and he voluntarily exposes himself to the hazard created. Sech vs.Rogers (1983), 6 Ohio St.3d 462. Comet argues that there was evidence that Roush assumed the risk of injury because he testified that he was aware of two general safety rules: that he should not work on a piece of equipment unless it was de-energized, and that he should not put his hands into an unfamiliar piece of equipment.
However, the affirmative defense of implied assumption of the risk requires that the injured party have more than a general knowledge that an activity may be dangerous. See Westray v. Imperial Pools andSupplies, Inc. (1999), 133 Ohio App.3d 426. Implied assumption of the risk denotes risks that are so obvious in a given situation that a person must have known and appreciated the risk. Id. at 432. There must be evidence that the plaintiff knew of the danger and intelligently and voluntarily proceed despite the known danger, or the danger must be so obvious that the plaintiff must have known of it. Mulloy v. Longaberger
(1989), 47 Ohio App.3d 77, 80.
The evidence at trial established that none of the employees at Thatcher, including supervisory employees, knew that the slug sucker machine posed a risk of harm. Roush testified that he thought the area he stuck his hand into was the same as the regrind hopper mounted on the left side of the bin. The regrind hopper on the left side was one of several other hoppers in the plant which were powered by a vacuum. Testimony at trial indicated that Comet had shown Thatcher employees to remove clogs by sticking their hands into these hoppers while the equipment was still running. Roush testified that he thought he would be able to put his hand under the bin and up through the airlock into the cyclone hopper and remove the clog. Neither he, nor any other employee was aware that there were moving vanes within the airlock. Even after the injury, a supervisor and another employee had to get an adjustable mirror to try to determine what was in the airlock that could have cut Roush's finger.
Comet argues that our decision in Kling v. Reading Concrete Products
(Sept. 9, 1996), Butler App. No. CA95-08-145, unreported, mandates reversal of the trial court on this issue. However, the facts of Kling
are distinguishable from the facts of the case at bar. In Kling, the plaintiff was injured after being warned several times not to enter into an area when a machine was operating. A supervisor had specifically cautioned him not to enter into the area while the machinery was operating because he would be injured. We found that the trial court did not err in instructing the jury on the issue of assumption of the risk.
In this case, neither the plaintiff nor any of the employees were aware that the slug sucker machine posed any danger. Although Roush understood general safety rules, there is no evidence to support a finding that Roush was aware that the slug sucker machine posed any danger to him. Because there is no evidence to support a finding that Roush voluntarily and unreasonably encountered a known risk posed by the slug sucker, the trial court did not err by denying Comet's request to instruct the jury on implied assumption of the risk.
Comet also contends that the trial court should have instructed the jury on intervening/superceding cause. Comet argues this instruction was warranted because the evidence indicates that someone removed a protective cone from the machine, and that someone removed a warning plaque that stated that the airlock contained a pinch point. Comet also argues that the instruction was warranted because Roush encountered a known risk when he ignored safety rules. However, we have already determined that no one at Thatcher was aware of the danger the machine posed.
At trial, Comet produced a design of a wall-mounted slug sucker. Although it was not the design which was ultimately used, Comet argued that it established that it intended the machine to be built with a protective cone. Comet also argued that the testimony of David Crowder, the engineer who assembled the slug sucker for Thatcher, established that the cone was attached to the machine when it was assembled. Comet argues that the testimony is undisputed and establishes that the accident could not have occurred if the protective cone had been in place.
A small, metal warning plate was attached to the side of the airlock by Wm. Meyers Son when it was manufactured. Comet contends that this warning tag was on the machine when it was shipped to Thatcher. Comet argues that the removal of this tag by someone at Thatcher warranted an instruction on intervening cause because Roush testified that if he had seen a warning sign on the machine he would not have put his hand into the airlock.
The defense of intervening causation acts to remove liability for an original tortious act. "[T]he defense of intervening causation may be invoked to avoid liability where the intervening cause is unforeseeable and is the proximate cause of the injury or damages." R.H. Macy Co.,Inc. v. Otis Elevator Co. (1990), 51 Ohio St.3d 108, syllabus. Liability then "attaches to the person or persons whose acts or omissions proximately cause the injury or damage." Id. The test for foreseeability in this context is "whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor."Queen City Terminals, Inc. v. Gen. Am. Trans. (1995), 73 Ohio St.3d 609,619-620. "Independent" means the "absence of any connection or relationship of cause and effect between the original and subsequent act of negligence." Id. at 620. "New" means "that the second act could not reasonably have been foreseen." Id.
Comet's arguments regarding the removal of the protective cone and/or the warning plaque are misplaced. Comet appears to be arguing that the slug sucker machine was not defective because the cone or the plaque would have prevented the accident. In effect, Comet is arguing that the removal of these parts was the proximate cause of the injury. However, intervening causation is applicable only when another party's actions intervene and cut off the tortious acts of the first party. If the design, including the cone and the plaque, was not defective when the slug sucker was shipped, there is no liability to be cut off by a second tortious act.
The trial court found that Comet's argument regarding the cone and warning plaque went to modification, not intervening causation. Instead of Comet's requested instruction on intervening causation, the trial court instructed the jury on the issue of substantial modification. The court read an instruction to the jury which stated:
 If you find that the machine was substantially modified after it left the possession of Comet Automation Systems, Inc. and that plaintiff was injured as a result of the modification then you cannot find Comet Automation Systems liable.
 Comet's arguments regarding changes made in either the design of the machine or to the machine itself go to the issue of modification and not to intervening cause. The jury was properly instructed that Comet could not be held liable if they found that the machine was modified after it left Comet's possession. Pursuant to this instruction, the jury was aware that Comet could not be liable if changes were made to the machine by someone at Thatcher. The trial court did not err in denying Comet's request for an instruction on intervening cause. Comet's second assignment of error is overruled.
In its third and fourth assignments of error Comet contends that the trial court erred by excluding certain evidence at trial. These assignments of error state:
Assignment of Error No. 3:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR WHEN IT EXCLUDED THATCHER TUBES DETAIL DRAWINGS OF THE REGRIND COLLECTION SYSTEM WHICH DEMONSTRATED ENTITIES OTHER THAN COMET DESIGNED THE REGRIND COLLECTION SYSTEM.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED WHEN IT EXCLUDED A COMET DRAWING WHICH DEMONSTRATED THAT COMET EXPECTED THAT A PROTECTIVE CONE WOULD BE INCORPORATED IN THE REGRIND COLLECTION SYSTEM.
 The decision of whether to admit evidence rests in the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Exhibits 36 and 37, the drawings referred to in the third assignment of error, were engineering drawings of the Thatcher plant, the piping and material conveying system and parts of the slug sucker machine. Comet argues that these drawings establish that Thatcher, not Comet, designed the slug sucker machine. The exhibits were first produced to opposing counsel during the week of trial. The drawings were identified by several witnesses, includ-ing, Rajkovich (Comet's owner), and Terry Shipley, an employee of Courtaulds. The drawings were identified by the witnesses as drawings prepared by Thatcher.
The jury heard evidence that drawings were prepared by Thatcher depicting various parts of the slug sucker machine. The actual drawings themselves involved the entire plant and were highly technical, requiring some amount of expertise to understand. In addition, they were not submitted to opposing counsel in a timely manner. The trial court did not abuse its discretion by excluding these drawings. Comet's third assignment of error is overruled.
The trial court also excluded exhibit 33, the drawing referred to in the fourth assignment of error. This exhibit was a drawing of a wall-mounted slug sucker machine. The drawing was unsigned and undated, and the wall-mounted machine was never constructed at Thatcher. The original drawing was initially produced by Rajkovich on the first day of trial. Rajkovich testified that the drawing was prepared by Comet and depicted the slug sucker machine with a protective cone. No evidence was introduced to show that anyone at Thatcher ever saw the drawing depicting a protective cone. Rajkovich was also able to show the drawing to the jury as he circled what he described as a protective cone. The jury heard evidence that Comet designed a machine with a protective cone, although the wall-mounted design was never used. Based on these facts, the trial court did not abuse its discretion in excluding the drawing. Comet's fourth assignment of error is overruled.
Comet's fifth assignment of error also contests the admission of evidence by the trial court. This assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR WHEN IT ADMITTED THE JONAS ACCIDENT REPORT CONTAINING INADMISSIBLE HEARSAY WHICH INCORRECTLY REPORTED THAT COMET APPROVED OF THE SUBSEQUENT REMEDIAL MEASURES MADE TO THE REGRIND COLLECTION SYSTEM.
 The trial court admitted an accident report which was prepared by Tom Jonas, president of Thatcher Tubes. As president, Jonas was charged with the duty to investigate all accidents. The report contained a statement that Kelly Garnett, a Thatcher employee, contacted Comet after the accident, and that Comet supplied recommendations on how interlocks could be fitted into the regrind collection system. Comet argues that this report was inadmissible hearsay.
Hearsay is an out of court statement offered into evidence to prove the truth of the matter asserted, Evid.R. 801(C), and as such is generally not admissible. Evid.R. 802. However, Evid.R. 803(6) provides an exception to the hearsay rule when the evidence is a record of regularly conducted business activity. This exception makes admissible
 A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
 Evid.R. 803(6). A trial court's decision whether to admit a report under Evid.R. 803(6) is within the court's sound discretion and will not be disturbed on appeal absent an abuse of discretion. Cleveland v. Huff (1984), 14 Ohio App.3d 207.
Jonas' deposition was read into evidence at trial. He testified that at the time of the accident he was the president of Thatcher and was responsible for safety at the plant. After Roush was injured, he visited the plant and investigated the accident. He stated that he prepared a report of his investigation. The report was addressed to B.J. Jeffries, who is the chief executive officer of Courtaulds. The report described the accident and the measures being taken to insure that similar incidents did not occur in the future. As such, we find the trial court did not abuse its discretion in finding the accident report fits the business record exception to the hearsay rule.
Comet argues that although the report may be a business record, a statement within the report by Garrett, a Thatcher employee, is inadmissible hearsay. Comet argues that Garnett's statement within the business record must come within another exception to the hearsay rule to be admissible. As support for this argument, Comet relies on Cox v.Oliver Machinery Co. (1987), 41 Ohio App.3d 28 . In Cox, this court held that a report prepared by an employee of a manufacturer that contained statements from employees of the company using the product was inadmissible hearsay. Id. at 37.
However, the facts of Cox are materially different from the facts of this case. In Cox, the employee of one company was seeking to admit statements in a report made by employees of another company. We found that the employees of the company using the product were not acting within the scope of the manufacturer's business when they made the statements contained in the report. Id. at 36. As such, the statements were inadmissible hearsay. Id.
In this case, the original statement by Comet to Garnett falls under the hearsay exception for admissions by a party. See Evid.R. 803(6). Garnett's statement, as an employee of Thatcher acting within his employer's business, does not require a separate hearsay exception. Where the initial source of the business information has personal knowledge and each participant in the chain of transmission is acting within the course of his regularly conducted activity, the record is admissible. Weissenberger's Ohio Evidence (1998) 445-446, Section 803.77. "In essence, Rule 803(6) creates a hearsay exception for each person in the chain * * *." Id. at 445. However, "each person in the chain must be an employee or agent of the business which retains the records in the regular course of its activity, i.e., each person in the chain must have a business duty to report accurately to the business keeping the record." Id.
Because the accident report and the statements within the report qualify under this exception to the hearsay rule, the trial court did not err in admitting the report. Comet's fifth assignment of error is overruled.
YOUNG and VALEN, JJ., concur.
 _____________ POWELL, P.J.